[No. C045239. Third Dist. Feb. 22, 2005.]

CHARLES A. WENTLAND et al., Cross-complainants and Appellants, v. WARREN A. WASS et al., Cross-defendants and Respondents.

COUNSEL

Mattaniah Eytan and Eric Schenk for Cross-complainants and Appellants.

Scott, Nichols & Matteucci and Michael J. Matteucci for Cross-defendants and Respondents.

OPINION

**MORRISON, J.**—Cross-complainants Charles Wentland, Wentland Family Investment Group and John Snider (collectively Wentland) appeal from a judgment dismissing their cross-complaint after the trial court sustained the demurrer of cross-defendants Warren Wass, Walter Reiss, and Walter Reiss, trustee of the Walter E. Reiss Defined Benefit Plan (collectively Wass and Reiss) on the ground that the cross-complaint was barred by the litigation privilege. Wentland contends the trial court erred because the litigation privilege does not apply to an action for breach of contract. Wass and Reiss respond the trial court's ruling was correct and request sanctions for a frivolous appeal. We conclude the policies behind the litigation privilege are not furthered by applying the privilege in this breach of contract case. We reverse the judgment and deny sanctions.

## BACKGROUND

This litigation arose out of several real estate investment partnerships managed by Wentland. In 1992, Wass and Reiss and others (plaintiffs) brought an action for an accounting in three partnerships, Consolidated Investors, Avenue Investments, and Kettlemen Lane Investors.

As to Consolidated Investors, Wentland moved for summary judgment, contending the dissolution and winding up of the partnership barred the accounting because plaintiffs failed to allege any substantive wrongdoing.

In opposition to this motion, plaintiffs argued that it was just and reasonable to permit the audit of the books of Consolidated Investors, because an audit of two other partnerships, Parkview Terrace and Avenue Investments, revealed evidence of self-dealing by Wentland. In support of this assertion, plaintiffs produced the declaration of Tim Weir, a certified public accountant. Weir declared that he had audited the partnership books and records in Avenue Investments and Parkview Terrace. The records revealed self-dealing by Wentland in both partnerships. Weir declared that Wentland withdrew $269,000 from Parkview Terrace and failed to disclose this fact to the partners. Wentland repaid these sums after he was advised an audit would

take place. On behalf of Avenue Investments, Wentland withdrew $217,500 from Parkview Terrace but he failed to disclose this fact to the partners or to account for any profits from these withdrawals.

About two and a half years later, Wentland filed a cross-complaint against Wass and Reiss that is the subject of this appeal. The cross-complaint alleged that Wentland had reached an agreement with Wass and Reiss concerning Parkview Terrace. This agreement provided that Wass and Reiss would make no accusation or comment that alleged wrongdoing by Wentland concerning Parkview Terrace, the terms of the agreement would be kept confidential, and Reiss signed a letter of apology that Wentland could release in the event of a breach of the agreement. The agreement provided for liquidated damages of $30,000 in the event of a breach by Wass and Reiss.

The cross-complaint alleged that Wass and Reiss had breached the agreement by the statements of their attorney and the declaration of Tim Weir in opposition to the motion for summary judgment in the Consolidated Investors case. The cross-complaint sought declaratory relief and damages against Reiss for breach of the contract.

Reiss generally demurred to the cross-complaint on the basis that the disclosures on which it was based were privileged under Civil Code section 47, subdivision (b)(2) (section 47(b)). Reiss also specially demurred to each cause of action on the grounds of vagueness and uncertainty.[1]

The trial court sustained the demurrer without leave to amend, finding the privilege of section 47(b) applied.

Several years later in 2003, a final judgment dismissed both the complaint and the cross-complaint. Wentland appeals as to dismissal of the second cause of action of the cross-complaint for breach of contract.

## DISCUSSION

■ "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Aubry v. Tri-City Hospital Dist.*

---

[1] Only Reiss demurred to the cross-complaint. The trial court and the parties treated the demurrer as filed by all cross-defendants. In the notice of appeal Wentland asserts the cross-defendants in the second cause of action are Wass and Reiss, although the cross-complaint names only Reiss as a defendant in the second cause of action.

(1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) Our review of the legal sufficiency of the complaint is de novo, "i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.]" (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) The question before us is whether "the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist., supra,* at p. 967.)

The cross-complaint set forth three causes of action, two for declaratory relief and one for breach of contract. Wentland appeals only as to the breach of contract claim. The cross-complaint alleged Wentland was the managing partner of Parkview Terrace, a general partnership in which Reiss and Wass were partners. Parkview Terrace was engaged in the business of developing real property in Lodi. In 1988 and 1989, the real estate market for commercial properties in and around Lodi began to deteriorate. As a result, units in Parkview Terrace did not sell or did not sell at expected prices. Beginning in 1990, Wass and Reiss began a whispering campaign against Wentland, asserting that he engaged in misappropriation of assets of Parkview Terrace. Wass and Reiss engaged Tim Weir, a CPA, to review the books and records. Wentland provided detailed responses to many questions and provided documents "to put to rest inquiries that had as their purpose the manufacture of a contention that WENTLAND had engaged in wrongdoing."

The cross-complaint further alleged that despite these responses, Wass and Reiss continued to tell mutual friends and acquaintances they believed Wentland had committed wrongdoing in the affairs of Parkview Terrace. After one year, Wentland, Wass, and Reiss signed an agreement on October 9, 1991. The agreement provided that Wass and Reiss would sell their 10 percent interest in Parkview Terrace to Wentland. Wass and Reiss would promise not to make any accusation or comment that alleged wrongdoing by Wentland in the affairs of Parkview Terrace. The exact language of this promise is at pages six and seven of the agreement "to the effect that REISS would not make any statement or charge that 'may have the effect of impugning the honesty or integrity' of WENTLAND in his management of PARKVIEW TERRACE." The terms of the agreement would be kept confidential under a confidentiality provision.

The agreement further provided that Reiss would sign a letter of apology whose terms were set forth. The letter of apology would not be released by Wentland unless Wentland received information that Reiss had breached the agreement by making statements concerning Wentland's wrongdoing and Wentland complied with the provisions of the agreement giving Reiss 10 days to admit or rebut the alleged breach. For any breach of the agreement,

Wass and Reiss would be liable to Wentland in the sum of $30,000. Wass and Reiss were represented by attorney Robert Sternfels during negotiation of the agreement.

The cross-complaint further alleged that in opposition to a motion for summary judgment relating to Consolidated Investors, "WASS and REISS authorized the CPA Tim Weir to execute a declaration stating that, in connection with the affairs of PARKVIEW TERRACE, WENTLAND had committed wrongdoing. Weir's declaration, dated October 2, 1992, was submitted to the Superior Court and was tendered by WASS and REISS through Robert B. Sternfels who, here again, acted as the attorney for WASS and REISS. In addition, Sternfels himself charged in a memorandum signed by him and in behalf of WASS and REISS that WENTLAND had committed wrongdoing in connection with the affairs of PARKVIEW TERRACE."

The cross-complaint alleged Weir's declaration and the charges made by Sternfels violated the confidentiality provision of the agreement and invoked application of Reiss's apology letter. Wentland had given Reiss the required 10-day notice and was free to release the letter. Wentland sought the $30,000 in liquidated damages under the agreement.

■ The general demurrer to this cause of action was based on the litigation privilege of section 47(b). The trial court found the litigation privilege applied and barred the action. Section 47(b) provides in part that a privileged communication is one made in a judicial proceeding. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].)

Wass and Reiss contend the communications Wentland challenges, Weir's declaration and the memorandum in opposition filed by Sternfels, fall clearly within the formulation of the litigation privilege and so are privileged. Wentland argues that the privilege does not apply to an action for breach of contract where a party presents statements in litigation although the party has contracted to keep such statements confidential.

Wentland relies primarily on *Navellier v. Sletten* (2003) 106 Cal.App.4th 763 [131 Cal.Rptr.2d 201] (*Navellier II*). In *Navellier II*, the plaintiff filed an action for fraud and breach of contract, alleging the defendant misrepresented his intentions in signing a release of liability and breached the release by filing counterclaims in a federal lawsuit. At issue on remand was whether the plaintiffs had shown a probability of prevailing on the merits in order to

defeat a motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16) (strategic lawsuit against public participation). The appellate court found the fraud claim barred by the litigation privilege. It assumed, without deciding, that the privilege did not preclude the breach of contract claim, but that claim failed due to the lack of damages. (*Navellier II, supra,* at p. 769.)

The court declined to hold the litigation privilege barred the breach of contract cause of action for four reasons. (*Navellier II, supra,* 106 Cal.App.4th at p. 773.) First, several California Supreme Court cases described the privilege as precluding liability in tort, not contract. (*Ibid.*) For example, in *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193 [17 Cal.Rptr.2d 828, 847 P.2d 1044], the court said: "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from *tort* liability by the privilege codified as [Civil Code] section 47(b)." (Italics added.) Cases that had applied the privilege to bar contract as well as tort claims did not discuss whether all breach of contract cases were necessarily precluded. (*Navellier II, supra,* at pp. 773–774.)

Second, the Supreme Court majority in *Navellier* had stated that a defendant who contracts not to speak or petition has waived the right to anti-SLAPP protection if he later breached the contract. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 [124 Cal.Rptr.2d 530, 52 P.3d 703].) The appellate court found the high court's discussion indicated that a breach of contract claim like the one at issue there could have merit. (*Navellier II, supra,* 106 Cal.App.4th at p. 774.)

Third, the litigation privilege was found not to bar a suit under the False Claims Act, even though the suit was based on a claim filed in anticipation of litigation, in *Stacy & Witbeck, Inc. v. City and County of San Francisco* (1996) 47 Cal.App.4th 1 [54 Cal.Rptr.2d 530] (*Stacy & Witbeck*). In *Stacy & Witbeck,* the court noted the claim was required under the contract and thus served a purpose independent of its litigation purpose. (*Id.* at pp. 6–7.) "If that same paper trail amounts to wrongful performance or conduct, it escapes section 47(b). . . . [¶] . . . The litigation privilege was never meant to spin out from judicial action a party's performance and course of conduct under a contract." (*Id.* at p. 8.) The *Navellier II* court found the same reasoning could be applied to a counterclaim filed in breach of a release, suggesting the litigation privilege would not bar the breach of contract claim. (*Navellier II, supra,* 106 Cal.App.4th at p. 774.)

Finally, the defendant in *Navellier II* acknowledged that the litigation privilege might not apply if the contract was a covenant not to sue because then it would frustrate the very purpose of the contract if there were a privilege to breach the contract. Thus, the defendant suggested the litigation privilege did not categorically preclude all breach of contract actions.

(*Navellier II, supra,* 106 Cal.App.4th at p. 774.) The court assumed the litigation privilege did not bar the breach of contract cause of action, but concluded it should have been stricken because the plaintiffs failed to substantiate any damages. (*Id.* at pp. 774–775.)

Without mentioning the case by name, Wass and Reiss dismiss the reasoning in *Navellier II* as dicta and contend there is no rule of law that the litigation privilege applies only to tort cases. Instead, they cite to the two cases noted in *Navellier II* that applied the litigation privilege in breach of contract cases, *Laborde v. Aronson* (2001) 92 Cal.App.4th 459 [112 Cal.Rptr.2d 119] and *Pollock v. Superior Court* (1991) 229 Cal.App.3d 26 [279 Cal.Rptr. 634].

■ Our review of *Laborde* and *Pollock,* as well as other cases that have considered the litigation privilege in the context of a breach of contract case, instructs that whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege. (*Laborde v. Aronson, supra,* 92 Cal.App.4th 459; *Pollock v. Superior Court, supra,* 229 Cal.App.3d 26.)

■ The "principal purpose" of the litigation privilege "is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort action." (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 213.) The privilege "promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings." (*Ibid.*) The privilege "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id.* at p. 214.) "Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citation.]" (*Ibid.*) In summary, the purpose of the litigation privilege is to ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation. (*Ibid.*)

In *Pollock v. Superior Court, supra,* 229 Cal.App.3d 26, the plaintiff, an attorney, was sanctioned for failing to appear at a mandatory settlement conference. Claiming he relied on opposing counsel to notify the court of a settlement and to take the settlement conference off calendar, the plaintiff sued opposing counsel for breach of contract and fraud. The appellate court found opposing counsel's demurrer should have been sustained. (*Id.* at p. 28.)

The plaintiff had numerous remedies if he believed the sanction order was in error: he could seek reconsideration, or he could file a statutory motion to enforce the settlement or an independent action to compel enforcement of the settlement. (*Id.* at p. 29.) Public policy did not support permitting attorneys to sue one another for omissions and representations made during litigation which "could lead to geometric proliferation of litigation." (*Id.* at p. 30.)

In *Laborde v. Aronson, supra,* 92 Cal.App.4th 459, the plaintiff contended his suit for breach of contract and various torts against the psychologist retained to conduct a custody evaluation in a dissolution proceeding was not barred by the litigation privilege. The court disagreed, finding the privilege applied where the gravamen of the complaint was negligent or intentional tortious conduct committed in connection with the testimonial function. (*Id.* at p. 463.) The court rejected the argument that an exception applied due to spoliation of evidence, based on the plaintiff's assertion the psychologist tampered with a consent for release of medical records. The court found the exception applied only where the alleged alteration or destruction is intended to deprive a party of use of that evidence. (*Id.* at p. 464.)

In other cases the litigation privilege has not precluded actions based on breach of contract. In *ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307 [262 Cal.Rptr. 773], the court found the privilege did not apply to statements in breach of an express contract of confidentiality or nondisclosure. The defendant had signed an agreement not to disclose the plaintiff's trade secrets. The complaint alleged he breached this agreement by supplying information to a third party to assist in litigation. Balancing the society's interest in accurate judicial proceedings against the plaintiff's property interest in trade secrets and the defendant's written promise of nondisclosure, the court found the privilege did not apply. (*Id.* at p. 320.) The court noted there was no claim the disclosures were judicially compelled. (*Ibid.*) The Legislature has codified this exception to the litigation privilege; the privilege does not apply to unauthorized disclosures of trade secrets. (Civ. Code, § 3426.11.)

In *Mattco Forge, Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 406 [6 Cal.Rptr.2d 781], the court found the policies underlying the litigation privilege were not furthered by applying the privilege to a suit sounding in contract and tort against an expert witness hired to assist the plaintiff in litigation. Encouraging the truthful testimony of experts was advanced only by shielding neutral or adverse experts from liability; shielding the plaintiff's own negligent expert had the opposite effect. (*Id.* at p. 404.)

As noted in *Navellier II, supra,* 106 Cal.App.4th 763, the court in *Stacy & Witbeck, supra,* 47 Cal.App.4th 1, 5–8, found the litigation privilege did not bar an action under the False Claims Act based on the same contract claim

because that claim was a course of conduct under the contract. (See also *Bardin v. Lockheed Aeronautical Systems Co.* (1999) 70 Cal.App.4th 494, 504 [82 Cal.Rptr.2d 726] [declining to apply section 47(b) privilege to contract causes of action, but finding written release barred those claims].)

■ For the reasons set forth in *Navellier II, supra,* 106 Cal.App.4th 763, 773–774, and considering the policies to be furthered by the litigation privilege, we conclude the privilege should not apply in this breach of contract case. Just as one who validly contracts not to speak waives the protection of the anti-SLAPP statute (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 94), so too has he waived the protection of the litigation privilege. The litigation privilege has never shielded one from all liability. One who makes an injurious communication may be criminally liable for perjury (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 219), or subject to professional disciplinary proceedings (*Budwin v. American Psychological Assn.* (1994) 24 Cal.App.4th 875, 881 [29 Cal.Rptr.2d 453]).

■ The policies behind the litigation privilege are not furthered by its application in this case. Unlike in the usual derivative tort action, application of the privilege in the instant case does not serve to promote access to the courts, truthful testimony or zealous advocacy. This cause of action is not based on allegedly wrongful conduct during litigation, as in *Pollock v. Superior Court, supra,* 229 Cal.App.3d 26, and *Laborde v. Aronson, supra,* 92 Cal.App.4th 459. Rather, it is based on breach of a separate promise independent of the litigation, as in *ITT Telecom Products Corp. v. Dooley, supra,* 214 Cal.App.3d 307. This breach was not simply a communication, but also wrongful conduct or performance under the contract, as in *Stacy & Witbeck.* Like the example of the covenant not to sue in *Navellier II,* here application of the privilege would frustrate the purpose of the Parkview Terrace agreement.

Application of the litigation privilege in this case does not encourage finality and avoid litigation. In reaching settlement in the Parkview Terrace matter, the parties presumably came to an acceptable conclusion about the truth of Reiss's comments about Wentland's management of the partnership. Allowing such comments to be made in litigation, shielded by the privilege, invites further litigation as to their accuracy and undermines the settlement reached in the Parkview Terrace matter.

Wass and Reiss contend that even if the litigation privilege applies only to tort actions, it should apply here because the gravamen of the cross-complaint is that they tortiously damaged Wentland through their alleged false statements. Where the gravamen of the cause of action sounds in tort, not contract, the litigation privilege applies. (*Edwards v. Centex Real Estate*

*Corp.* (1997) 53 Cal.App.4th 15, 40 [61 Cal.Rptr.2d 518] [rejecting argument that privilege did not apply to action for rescission of contract based on fraud].)

■ "It has been well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu but if it arises from a breach of duty growing out of the contract it is ex delicto. [Citations.]" (*Little v. Speckert* (1959) 170 Cal.App.2d 725, 727 [339 P.2d 611].) The cross-complaint alleged Wass and Reiss breached the Parkview Terrace agreement by authorizing negative comments to be made about Wentland's management, not because such comments were false (although it alleged they were), but because they had promised not to continue to make such comments. The cross-complaint sounds in contract, not tort.

Wass and Reiss next contend that even if the trial court erred in sustaining the demurrer under the litigation privilege, its ruling must be upheld if it was correct on any ground. (*Maheu v. CBS, Inc.* (1988) 201 Cal.App.3d 662, 670 [247 Cal.Rptr. 304].) They assert the cross-complaint fails to state a cause of action for breach of contract because it alleged that it was the declaration of Weir, not any statement by Wass or Reiss, that violated the agreement.

Wentland responds that a cause of action for breach of contract is stated because the cross-complaint alleged Weir acted as the agent of Wass and Reiss. The cross-complaint alleged Wass and Reiss "authorized the CPA Tim Weir to execute a declaration stating that, in connection with the affairs of PARKVIEW TERRACE, WENTLAND had committed wrongdoing." While these allegations are hardly a model of clarity and precision as to agency, the cross-complaint contained a more direct allegation of a breach of contract by an agent of Wass and Reiss. It also alleged that the memorandum in opposition to the motion for summary judgment, prepared by their attorney, also breached the agreement by charging that Wentland committed wrongdoing. "The relationship of attorney and client is one of agent and principal. [Citations.]" (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 69 [131 Cal.Rptr.2d 777].)

The cross-complaint alleged a breach of contract by Wass and Reiss through an agent. We have concluded the litigation privilege should not apply to an action for breach of contract in these circumstances; therefore, the trial court erred in sustaining the demurrer.

Wass and Reiss request sanctions for a frivolous appeal. Because we have found merit in Wentland's appeal, we deny sanctions. (*Simms v. NPCK Enterprises, Inc.* (2003) 109 Cal.App.4th 233, 244 [134 Cal.Rptr.2d 557].)

## DISPOSITION

The judgment is reversed. Wentland shall recover costs on appeal.

Scotland, P. J., and Sims, J., concurred.