[No. G039782. Fourth Dist., Div. Three. Oct. 1, 2008.]

HANELINE PACIFIC PROPERTIES, LLC, Plaintiff and Appellant, v. CARL R. MAY et al., Defendants and Respondents.

COUNSEL

DLA Piper, Betty M. Shumener, Henry H. Oh, John D. Spurling; Dubia Erickson & Tenerelli and Christian F. Dubia, Jr., for Plaintiff and Appellant.

Jackson, DeMarco, Tidus & Peckenpaugh, Roger M. Franks and Jeff J. Astarabadi for Defendants and Respondents.

OPINION

MOORE, J.—This is an appeal from an order granting a special motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] (Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.) The trial court found that the allegations of the complaint fell within the litigation privilege, but upon independent review, we disagree. We find the gravamen of plaintiff's complaint does not relate to contemplated litigation, but attempts at persuasion and negotiation between co-owners of property regarding how best to manage their property. We therefore reverse and remand.

I

FACTS

The underlying action in this case involves real property in Laguna Beach (the property). In 1961, K.B. May and Norma N. May, owners of the property, entered into a lease with Loren and Elizabeth Haneline. The lease term was 58 years, from 1961 to 2019. In 1970, the Hanelines entered into a sublease with Vacation Bay Hotel Properties, Inc. (VBHP). The property was improved and operated as a hotel.

Norma May died in 1978. Upon her death, two separate trusts were created—the Children's Trust and the Survivor's Trust. The only asset of the

---

[1] "SLAPP is an acronym for 'strategic lawsuits against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

Children's Trust was an undivided one-half interest in the property. In 2005, Carl R. May (May) acquired this interest by quitclaim deed. The Survivor's Trust owned the other one-half interest in the property.[2] Thus, May and the Survivor's Trust were co-owners of the property and colandlords under the lease. The rent on the property was $55,196.36 per year.

In April 2006, plaintiff Haneline Pacific Properties, LLC (Haneline),[3] received an offer from the trustee of the Survivor's Trust, George Sutton, to sell the trust's 50 percent interest in the property for $525,000. After some subsequent communication, Haneline agreed to buy the interest at that price. The sale, however, was not completed. In May 2006, the hotel on the property was acquired by Laguna Resort Property, LLC (LRP).

May believed the rent on the property was substantially below market and asked his attorneys to consider whether terminating the lease was possible. Based on a nonassignment provision, May's attorneys concluded it was.[4] Without the lease, the property would be worth considerably more. May sought Sutton's assistance in pursuing this option. In what Haneline calls a carrot-and-stick approach, it claims May "alternated overtures of friendship and concern with threats and misrepresentations . . . ."

During an initial conversation in August 2006, May's attorney, Ronald J. DeFelice, contacted Sutton. Sutton advised DeFelice of a "potential deal" to sell the trust's interest in the property. DeFelice told Sutton that the sales price was "off by a factor of ten." Shortly thereafter he received a call from Janet Oldfield, an attorney representing Sutton and Marie Waltz, the beneficiary. After Oldfield said there was no written agreement as of yet to sell the trust's interest, DeFelice asked her to advise Sutton to cooperate with May regarding a termination of the lease. She said she would discuss the matter with Waltz. After Oldfield stopped communicating with DeFelice, he sent her a letter on August 25, 2006. The letter asserted a fiduciary duty between May and the trust, and stated that absent Sutton's communication by August 30, May would assume that the trust refused to honor its fiduciary obligations to May. As a result, the trust would be liable for any losses May suffered.

---

[2] Marie Waltz was the beneficiary of the survivor's trust, entitled to the income derived from the survivor's trust's 50 percent interest in the property during her lifetime.

[3] Originally, the survivor's trust had established the Red Cross as the remainder beneficiary of the trust after Waltz's death. Haneline purchased the remainder interest from the Red Cross.

[4] This was the subject of a separate dispute. According to LRP, it acquired 100 percent of VBHP's stock and the membership interests of Haneline. Thus, LRP argued, no violation of the nonassignment clause had occurred.

On September 7, DeFelice sent Oldfield an e-mail stating that based on preliminary appraisals, the property would be worth in excess of $30 million. On September 13, DeFelice sent Oldfield another letter, which he characterized as a "demand letter." DeFelice again asserted the trust had fiduciary obligations to May, threatening to hold the trust responsible for any losses to May if the trust refused to cooperate with May's attempt to terminate the lease. In late October, DeFelice proposed, on behalf of May, that Sutton and Waltz jointly retain DeFelice's firm, on a contingent fee basis, to, among other things, terminate the lease. On November 8, DeFelice sent an e-mail to Oldfield, stating that an appraisal demonstrated that the value of the property, unencumbered by the lease, was $17.5 million. (Haneline asserts this appraisal used faulty methodology and was overinflated, designed to lure Sutton with the prospect of a windfall.)

On January 7, 2007, May and his wife, Bonnie Montoya-May (collectively the Mays) sent a letter to Sutton, claiming that despite the clear demonstration that the property was worth considerably more than the trust's sale offer, the Mays would be moving forward without the trust's assistance.

In March, Haneline filed a complaint against Sutton for breach of contract. In July, as part of a settlement, Sutton sold the trust's interest in the property to Haneline for $950,000—$425,000 more than the initial offer.

On July 27, Haneline filed the present complaint against the Mays for interference with contract, interference with prospective economic relations, and "tort of another." On September 17, the Mays filed an anti-SLAPP motion pursuant to section 425.16. They argued that the tortious acts Haneline alleged in the complaint were prelitigation conduct protected by the litigation privilege (Civ. Code, § 47). They further argued that Haneline could not demonstrate a prima facie showing to support a probability of success on the merits.[5]

On November 15, the court entered an order granting the Mays' anti-SLAPP motion and dismissing the complaint. Based on new case law, Haneline brought a motion for consideration, which was subsequently denied. Haneline now appeals.

---

[5] While the motion was pending, the Mays filed a cross-complaint against both Haneline (for declaratory relief) and Sutton (for breach of fiduciary duty). The claim against Sutton was premised on the notion that Sutton owed May a fiduciary duty as cotenant. Sutton filed a demurrer, joined by Haneline, which the court later sustained on the grounds that based on the allegations in the cross-complaint, "co-tenants that acquired their interest at different times through different instruments don't have that relationship of trust and confidence." The Mays did not take advantage of leave to amend, instead filing a request to dismiss the cross-complaint against Sutton.

# II

## DISCUSSION

*Jurisdiction and Standard of Review*

An order granting or denying a special motion to strike is subject to immediate appeal. (§ 425.16, subd. (j)(1).) We exercise independent judgment to determine whether the motion to strike should have been granted. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

*The Anti-SLAPP Statute*

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446], disapproved of on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].) In response to the threat such lawsuits posed to the important public policy of open and free participation in the democratic process, the Legislature adopted section 425.16 (the anti-SLAPP statute): "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute is to be "construed broadly." (§ 425.16, subd. (a).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at p. 815, fn. 2.)

The statute defines " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection

with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

■ "Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at p. 733.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

*Protected Activity*

We must first decide whether the challenged claims arise from acts in furtherance of defendant's right of free speech or right of petition under one of the four categories set forth in section 425.16, subdivision (e). (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58].) The categories suggested by the facts in this case are "any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law" or "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e).)

■ The Mays claim that the torts alleged by Haneline "arise from" protected activity because those acts are privileged pursuant to Civil Code section 47, subdivision (b) (the litigation privilege). Indeed, this is the only argument offered by the Mays in support of the applicability of the anti-SLAPP statute in this case. As pertinent here, Civil Code section 47, subdivision (b) provides: "A privileged publication or broadcast is one made . . . [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ." The "principal purpose of section 47[, subd. (b)] is to afford litigants [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 [266 Cal.Rptr. 638, 786 P.2d 365].)

"Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.]" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212.)

"The scope of the protections afforded to litigation-related communications under the anti-SLAPP statute and that afforded by the litigation privilege (Civ. Code, § 47) are not identical. The two statutes 'are substantively different statutes that serve quite different purposes . . . .' [Citations.]" (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479 [74 Cal.Rptr.3d 1].) Thus, while prelitigation communications can fall within the ambit of the anti-SLAPP statute, the question here is whether the communications at issue are accurately characterized as such. The communications at issue here are those between Sutton, the trustee, and May and his attorneys, specifically, the letters and e-mails that were exchanged attempting to persuade Sutton to join with May to terminate the lease. Haneline's theory is that those communications prompted Sutton not to consummate the alleged contract at $525,000.

The litigation privilege "arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 39 [61 Cal.Rptr.2d 518], italics omitted.)

"[I]t is the *principal thrust or gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation] . . . ." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494].) We are unpersuaded that the communications that form the gravamen of Haneline's complaint fall within the ambit of the litigation privilege. Despite the mentions of "pursuing remedies" the overall tone of the communications is one of persuasion and a desire to cooperate to achieve mutual goals. Despite characterizing his September 13 letter to Oldfield as a "demand letter," in a letter to Haneline's attorney dated two days later, DeFelice asserted: "At no time has Mr. May or any representative of Mr. May, including this firm, made any demand of or threat against the trustee or the beneficiary of the Trust with respect to a sale of the Trust's undivided one-half interest in the Property to your client." Thus, it seemed that not even the Mays' attorney construed his prior communications with Sutton as threats of, or in anticipation of, litigation.

Further, far from contemplating or threatening litigation, DeFelice, on behalf of the Mays, sent a proposal to the trust and Sutton in October, suggesting that DeFelice's firm jointly represent both the Mays and the trust with respect to terminating the lease and selling the property. Further communications delivered appraisals. Overall, we find the tone and the language were intended to encourage collaboration and agreement, not "serious consideration" of litigation. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [63 Cal.Rptr.3d 398, 163 P.3d 89].) The communications here are thus clearly distinguishable from the cases cited by the Mays.

The Mays argue that "The spectre of litigation 'loomed' over the entire course of the parties' communications," but the same could be said of nearly any high-stakes negotiation. "[T]he purpose of the litigation privilege is to ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation. [Citation.]" (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492 [25 Cal.Rptr.3d 109].) We do not find that any of these purposes would be served by characterizing the communications at issue here as covered by the privilege. Negotiations and persuasion are part of any business deal. To suggest that nearly *any* attempt at negotiation is covered by the privilege, especially when attorneys are involved, is unduly overbroad. We do not find the purposes of the privilege stretch that far, and thus, neither should the privilege.

■ Because the communications at issue were not covered by the litigation privilege, the anti-SLAPP motion should not have been granted. Because the communications in question are not covered by the statute, we need not reach the issue of whether Haneline established a prima facie case of success on the merits.

*Attorney Fees*

■ In the final paragraph of each of its briefs on appeal, Haneline requests attorney fees. Pursuant to section 425.16, subdivision (c), a prevailing plaintiff is entitled to attorney fees if the court finds that the anti-SLAPP motion was "frivolous" or "intended to cause unnecessary delay." Because Haneline failed to develop an argument that this provision should apply here, we cannot reach that conclusion. Therefore, no attorney fees are awarded.

## III

## DISPOSITION

We reverse the order granting the Mays' anti-SLAPP motion and remand for further proceedings. Haneline is entitled to its costs on appeal.

Sills, P. J., and Ikola, J., concurred.

On October 14, 2008, the opinion was modified to read as printed above.