**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

3500 SEPULVEDA, LLC, a Delaware limited liability company; 13TH & CREST ASSOCIATES, LLC, a California limited liability company,
*Plaintiffs-Counter-Defendants-Appellants*,

v.

MACY'S WEST STORES, INC.,
*Defendant-Appellee*,

RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation,
*Defendant-Counter-Claimant-Appellee*,

v.

6220 SPRING ASSOCIATES, LLC, a California limited liability company,
*Counter-Defendant.*

No. 18-56620

D.C. No.
2:17-cv-08537-
R-JPR

3500 SEPULVEDA, LLC, a Delaware limited liability company; 13TH & CREST ASSOCIATES, LLC, a California limited liability company,
*Plaintiffs-Counter-Defendants-Appellees*,

v.

MACY'S WEST STORES, INC.,
*Defendant*,

and

RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation,
*Defendant-Counter-Claimant-Appellant*,

v.

6220 SPRING ASSOCIATES, LLC, a California limited liability company,
*Counter-Defendant-Appellee.*

No. 18-56637

D.C. No.
2:17-cv-08537-R-JPR

3500 SEPULVEDA, LLC, a Delaware limited liability company; 13TH & CREST ASSOCIATES, LLC, a California limited liability company,
*Plaintiffs-Counter-Defendants-Appellees*,

v.

MACY'S WEST STORES, INC.,
*Defendant*,

and

RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation,
*Defendant-Counter-Claimant-Appellant*,

6220 SPRING ASSOCIATES, LLC, a California limited liability company,
*Counter-Defendant-Appellee.*

No. 19-55227

D.C. No.
2:17-cv-08537-R-JPR

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company; 13TH & CREST ASSOCIATES, LLC, a California limited liability company, *Plaintiffs-Counter-Defendants-Appellants*, | No. 19-55273 D.C. No. 2:17-cv-08537-R-JPR |
| v. | OPINION |
| MACY'S WEST STORES, INC., *Defendant*, | |
| and | |
| RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation, *Defendant-Counter-Claimant-Appellee*, | |
| 6220 SPRING ASSOCIATES, LLC, a California limited liability company, *Counter-Defendant-Appellant.* | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted September 2, 2020
Pasadena, California

Filed November 20, 2020

Before:  Sandra S. Ikuta and Mark J. Bennett, Circuit Judges, and Douglas P. Woodlock,[*] District Judge.

Opinion by Judge Bennett

## SUMMARY[**]

### California Law

The panel affirmed the district court's summary judgment on the nuisance claim, and reversed the district court as to the remaining claims, in a diversity action alleging claims and counterclaims arising from a construction project to expand Manhattan Village Shopping Center in Manhattan Beach, California.

Plaintiffs are 3500 Sepulveda, LLC and 13th & Crest; and defendants are RREEF America REIT II Corporation BBB and Macy's West Stores, Inc.  RREEF brought counterclaims against plaintiffs and additional counterdefendant 6220 Spring Associates, LLC (together, counterdefendants are known as "Hacienda").  The parties' predecessors executed a Construction, Operation and Reciprocal Easement Agreement ("COREA") in 1980.  In 2008, the parties resolved various disputes in a Settlement Agreement, which included a "Site Plan."

---

[*] The Honorable Douglas P. Woodlock, United States District Judge for the District of Massachusetts, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Plaintiffs alleged that defendants violated the COREA. Applying California law, the panel held that the district court erred in granting summary judgment to defendants on this claim. The fact that RREEF had discretion to revise the Site Plan did not mean that Hacienda gave up its rights under the COREA, especially considering that the Settlement Agreement, by its own terms did not amend the COREA.

Plaintiffs alleged that defendants' Project interfered with their easement rights under the COREA. The panel held that the Settlement Agreement did not extinguish plaintiffs' easement rights under the COREA, and the district court erred in holding otherwise.

Plaintiffs alleged that defendants violated the Settlement Agreement's covenant of good faith and fair dealing. The panel held that there was a genuine dispute of material fact as to whether RREEF's construction of a north parking deck involved bad faith.

Plaintiffs alleged that defendants' construction encroached on their easement and eliminated essential parking, creating a nuisance under California law. The panel held that plaintiffs did not point to any specific offensive conduct or manner that was not authorized by the City of Manhattan Beach. Accordingly, plaintiffs did not raise triable issues of fact regarding the nuisance claim, and the panel affirmed the district court's grant of summary judgment.

Plaintiffs alleged that defendants intentionally or negligently interfered with Hacienda's business and contractual relations with its tenants. The panel held that plaintiffs raised triable issues whether defendants' construction interfered with Hacienda's tenant contracts, and

whether defendants acted with the knowledge that interference would occur as a result of their action. The panel reversed the district court's grant of summary judgment.

The panel also reversed the district court's grant of summary judgment as to plaintiffs' request for declaratory relief on the parties' rights and duties arising out of the Settlement Agreement and the COREA.

Concerning RREEF's counterclaims, the district court granted Hacienda's motion for summary judgment on the basis that RREEF's counterclaims were barred by California's litigation privilege. The panel disagreed. The panel held that policy considerations weighed against applying the litigation privilege here. Applying the litigation privilege to this case would undermine the Settlement Agreement and invite more litigation.

Finally, the panel held the attorneys' fees question moot, and vacated the district court's order denying the parties' motions for attorneys' fees.

## COUNSEL

Geoffrey B. Kehlmann (argued) and Robin Meadow, Greines Martin Stein & Richland LLP, Los Angeles, California, for Plaintiffs-Counter-Defendants-Appellants/ Cross-Appellees.

Michael G. Romey (argued), R. Peter Durning Jr., Jamie L. Sprague, and Sarah F. Mitchell, Latham & Watkins LLP, Los Angeles, California, for Defendant-Counter-Claimant-Appellee/Cross-Appellant.

**OPINION**

BENNETT, Circuit Judge:

Before the court are cross-appeals from the district court's orders granting summary judgment (i) to Defendants on Plaintiffs' claims, and (ii) to Counterdefendants on the counterclaims. We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-movant. *See Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016). The parties agree that California law applies. We affirm in part, reverse in part, and remand.

I.   Background

Plaintiffs are 3500 Sepulveda, LLC, and 13th & Crest Associates, LLC. They brought claims against Defendants RREEF America REIT II Corporation BBB ("RREEF"), and Macy's West Stores, Inc. ("Macy's"). Defendant RREEF then brought counterclaims against Plaintiffs and an additional Counterdefendant, 6220 Spring Associates, LLC (together, Counterdefendants are known as the "Hacienda Parties" or "Hacienda").

The parties' dispute concerns a construction project to expand Manhattan Village Shopping Center (the "Shopping Center") in Manhattan Beach, California. The forty-four-acre Shopping Center includes multiple parcels of land. The Hacienda Parties own a 0.7-acre parcel located at 3500 Sepulveda Boulevard. The Hacienda Building is a commercial building located on the 3500 Sepulveda property. Hacienda rents its space to commercial tenants, including restaurants, retail stores, and offices. Macy's

owns another single parcel of land, and RREEF owns the remaining parcels in the Shopping Center.

The parties' predecessors executed the Construction, Operation and Reciprocal Easement Agreement (the "COREA") in 1980. The COREA defines a "Common Area" within the Shopping Center as including the "Automobile Parking Area, access roads, driveways, Perimeter Sidewalks . . . , and similar areas." Under the COREA, the parties and their permittees have "nonexclusive easements over the Common Area of [the parties'] respective Tract[s], for the passage and accommodation of pedestrians and vehicles." The easements run with the land. Hacienda's tenants and customers drive through and park in the Common Area. The parking lot known as "Lot F" is particularly important to Hacienda, as Lot F is located "across the drive aisle from the Hacienda Building."

In 2006, RREEF applied to the City of Manhattan Beach (the "City") for approval to renovate and expand the Shopping Center. Around the same time, Hacienda was attempting to convert parts of its building from office space to restaurants. RREEF and Hacienda vigorously opposed each other's plans for renovation, and various legal disputes arose.

The parties resolved those disputes in a Settlement Agreement (the "Agreement") in 2008.[1] Under the terms of the Settlement Agreement, RREEF agreed not to oppose Hacienda's plan to convert office space into restaurants, and

---

[1] The parties to the Settlement Agreement are the Hacienda Parties—3500 Sepulveda, 13th & Crest, and 6220 Spring (which is a Counterdefendant but not a Plaintiff)—and RREEF. Macy's, which is a Defendant to some of the claims but not a Counterclaimant, is not named as a party to the Settlement Agreement.

Hacienda agreed not to oppose RREEF's expansion project (the "Project")—subject to certain limitations in the Agreement. The current dispute is over RREEF's Project, and Hacienda's restaurant-conversion plan is irrelevant for our purposes.

The Settlement Agreement includes a "Site Plan"—a series of drawings that set forth RREEF's proposed Project to expand Macy's and other retail space, and to construct new parking structures. The Site Plan and an additional "Parking Plan" lay out, among other things, the available retail and parking spaces during and upon completion of stages of construction. The Settlement Agreement provides that RREEF will submit the Site Plan to the City for approval: "RREEF is preparing to amend the RREEF Application [to the City] to reflect a revised expansion plan for the Shopping Center as generally depicted in the [attached] Site Plan." The Settlement Agreement also gives RREEF "discretion" to revise the Site Plan, and it allows Hacienda to object to certain material revisions during the City's approval process. Section 6 of the Settlement Agreement states that "nothing in this Agreement shall constitute an amendment to the . . . COREA."

The City's approval process includes circulating the proposed plan and environmental impact report for public comment and holding public hearings. During this process, RREEF submitted multiple revised versions of the Site Plan. Hacienda took issue with the new versions, which Hacienda believed were materially different from the agreed-upon Site Plan in the 2008 Settlement Agreement and would harm Hacienda's interests. In particular, Hacienda was concerned that the new plans reduced the amount of available parking for Hacienda and its tenants—both during and after the completion of construction. Hacienda and its agents

opposed the revised Site Plans in multiple public hearings, wrote letters to the City raising similar concerns, and were allegedly involved in certain lawsuits challenging the Project.

The City approved RREEF's Project—based on a revised Site Plan—in 2017, and construction began soon after. Hacienda's tenants started complaining about the construction almost immediately, raising concerns about the loss of parking spaces, road closures, and other inconveniences. Tenants demanded compensation for lost business. They also demanded rent reductions, threatened to not renew their leases, and threatened legal action.

In October 2017, Plaintiffs sued Defendants in California Superior Court, alleging breach of contract, anticipatory breach of contract, breach of the covenant of good faith and fair dealing, interference with easement rights, nuisance, and intentional and negligent interference with business and contractual relations. Plaintiffs' underlying theory is that the current Site Plan is substantially different from the agreed-upon Site Plan in the Settlement Agreement, and that RREEF's expansion and construction Project violates Plaintiffs' rights. Defendants removed the case to federal court, and RREEF filed counterclaims against the Hacienda Parties, alleging breach of contract and breach of the covenant of good faith and fair dealing. RREEF's theory is that Hacienda violated the Settlement Agreement by opposing the Project.

The parties filed cross-motions for summary judgment, and the district court granted both motions and dismissed all the claims and counterclaims. The parties then each filed a motion for attorneys' fees, which the district court denied on the ground that no party prevailed. This appeal and cross-appeal followed. Plaintiffs argue that the district court erred

in granting summary judgment on their claims, and RREEF argues that the district court erred in granting summary judgment on its counterclaims.

## II.  Plaintiffs' Claims

We affirm the district court's grant of summary judgment on the nuisance claim and reverse the district court as to the remaining claims.

### 1.  Breach of Contract

Plaintiffs allege that Defendants violated the COREA, under which the parties agreed to perform construction work "so as not to unreasonably interfere with the use, occupancy or enjoyment of the remainder of the Shopping Center or any part thereof by any other Party, and any other Occupant of the Shopping Center, and the Permittees of any other Party and such other Occupants."  The district court granted summary judgment to Defendants on this claim.  According to the district court, Plaintiffs agreed to the Project under the Settlement Agreement, and further agreed that RREEF would have discretion to revise the Site Plan and execute the Project; therefore, Plaintiffs cannot now complain of conduct to which they consented.

Plaintiffs point out that section 6 of the Settlement Agreement provides that "nothing in this Agreement shall constitute an amendment to the . . . COREA," and argue that they have claims under the COREA.  The district court, however, essentially read section 6 out of the Agreement:

> While Section 6 of the Settlement Agreement
> states that the agreement does not constitute
> an amendment to the COREA, the agreement
> would essentially lose all meaning if the court

were to adopt [Hacienda's] interpretation of this section as preserving all of their easement rights even during the duration of the construction project.

We disagree. We conclude that section 6 can be harmonized with the rest of the Settlement Agreement and with the COREA. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Read in conjunction with section 6, sections 4 and 5 of the Settlement Agreement provide that RREEF has discretion to pursue the Project and alter the Site Plan, and Hacienda's objections to the City are limited to RREEF's material changes. That RREEF has discretion to revise the Site Plan does not mean that Hacienda gave up its rights under the COREA, especially considering that the Settlement Agreement, by its own terms, does not amend the COREA.[2]

## 2. *Interference with Easement Rights*

Plaintiffs allege that Defendants' Project has interfered with their easement rights under the COREA. Under California law, interference with an easement is actionable when the grantor of the easement "*unreasonably impede*[*s*] the [grantee] in his rights," *Dolnikov v. Ekizian*, 165 Cal. Rptr. 3d 658, 666 (Ct. App. 2013) (quoting *City of Los*

---

[2] The district court stated that Defendants argued below that the Settlement Agreement's release provision "includes Plaintiffs' claims" related to the Project. On appeal, Defendants do not argue that the Settlement Agreement's release provision bars Plaintiffs' claims in this lawsuit, and we do not address this issue. As discussed below, we note that the release provision is ambiguous on its face and extrinsic evidence is needed to interpret the provision.

*Angeles v. Howard*, 53 Cal. Rptr. 274, 277 (Ct. App. 1966)), through actions "that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement," *id.* (emphasis omitted) (quoting Restatement (Third) of Property: Servitudes § 4.9 cmt. c (Am. Law Inst. 2000)).

The district court granted summary judgment to Defendants, again concluding that Plaintiffs cannot sue Defendants for conduct to which Plaintiffs consented. As discussed above, the Settlement Agreement does not extinguish Plaintiffs' easement rights under the COREA, and the district court erred in holding otherwise.

### 3. *Breach of the Covenant of Good Faith and Fair Dealing*

Plaintiffs argue that Defendants violated the Settlement Agreement's covenant of good faith and fair dealing when they used their discretion "to unfairly change the site plan and engage in unreasonable construction activities." "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 765 P.2d 373, 390 (Cal. 1988) (quoting *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 200 (Cal. 1958)). A party can breach the covenant without "breach of a specific provision of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 727 (Cal. 1992). Rather, the question is whether the party's conduct, "while not technically transgressing the express covenants . . . frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 14 Cal. Rptr. 2d 335,

338 (Ct. App. 1992) (quoting *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 256 (Ct. App. 1990)). "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *Carma Devs.*, 826 P.2d at 726. The party with discretionary power must exercise such power in good faith and through "objectively reasonable conduct." *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 284 (Ct. App. 1998) (quoting *Lazar v. Hertz Corp.*, 191 Cal. Rptr. 849, 857 (Ct. App. 1983)).

Section 5 of the Settlement Agreement provides that the "North Deck *may* be constructed in two stages—Stage One and Stage Two—as depicted on the Site Plan and in substantial conformity with [the Parking Plan]," and that "the construction of the Parking Decks shall be subject to the additional terms set forth in attached Exhibit G." Exhibit G further provides that "[d]uring Stage One construction of the North Deck, there shall be not less than 240 parking spaces available in the area referenced as 'Lot F.'" RREEF thereafter decided to construct the North Deck as a "unitary deck" rather than in stages, and did not maintain the 240 parking spaces in Lot F.[3]

Because the Settlement Agreement does not *require* construction of the North Deck in stages, and Exhibit G provides for 240 parking spaces during Stage One, RREEF has not expressly breached the Agreement by constructing the North Deck without maintaining any parking spaces in

---

[3] Hacienda's opening brief appears to suggest that its breach of covenant claim is based on a theory of anticipatory breach because RREEF represented that it did not intend to maintain the 240 parking spaces. However, construction of the North Deck has since begun, thereby mooting the anticipatory breach theory.

Lot F.    However, viewing the facts in the light most favorable to Plaintiffs, there is a genuine dispute of material fact as to whether RREEF's construction of the North Deck involved bad faith.    The parties clearly contemplated whether construction of the North Deck would cause parking shortages for Hacienda and agreed to measures to mitigate those expected problems.    Notably, Exhibit G does not say that its terms are applicable only if the North Deck is constructed in stages.    Rather, it simply assumes that there will be stages of construction.    RREEF has not presented any evidence that constructing the North Deck as a "unitary deck" will eliminate or mitigate the contemplated problems regarding parking shortages.    Accordingly, Plaintiffs have presented sufficient evidence to raise a triable issue as to whether RREEF's construction of the North Deck was contrary to "the contract's purposes and the parties' legitimate expectations."  *Carma Devs.*, 826 P.2d at 728.

### 4.  *Nuisance*

Plaintiffs    allege    that    Defendants'    construction encroached on their easement and eliminated essential parking, creating a nuisance under California law.  *See Monks v. City of Rancho Palos Verdes*, 84 Cal. Rptr. 3d 75, 104 (Ct. App. 2008).  Defendants argue that the Project was constructed in accordance with City regulations; therefore, it could not have been a nuisance.  *See* Cal. Civ. Code § 3482 ("Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."); *Williams v. Moulton Niguel Water Dist.*, 232 Cal. Rptr. 3d 356, 361 (Ct. App. 2018) ("Although [§ 3482] speaks in terms of 'a statute,' that term has been broadly interpreted to include regulations and other express government approvals.").

Plaintiffs respond that "even if there were a City ordinance approving the expansion project, it would not

expressly allow RREEF to engage in such harmful interference as to eliminate all convenient parking for the Hacienda Building during a yearlong construction project." While it is true that "although an activity authorized by statute cannot be a nuisance, the [m]anner in which the activity is performed may constitute a nuisance," *Venuto v. Owens-Corning Fiberglas Corp.*, 99 Cal. Rptr. 350, 359 (Ct. App. 1971), Plaintiffs do not point to any specific offensive conduct or manner that was not authorized by the City. Accordingly, Plaintiffs have not raised triable issues of fact regarding the nuisance claim, and we affirm the district court's grant of summary judgment.

### 5. *Interference with Business and Contractual Relations*

Plaintiffs allege that Defendants intentionally or negligently interfered with Hacienda's business and contractual relations with its tenants, pointing to tenant complaints about RREEF's construction. The elements of a claim of intentional interference are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990)). The only difference between intentional and negligent interference is the defendant's intent. *See Nelson v. Tucker Ellis, LLP*, 262 Cal. Rptr. 3d 250, 264 n.5 (Ct. App. 2020).

We conclude that Plaintiffs have raised triable issues whether Defendants' construction interfered with Hacienda's tenant contracts, and whether Defendants acted

with the knowledge that "interference is certain or substantially certain to occur as a result of [their] action." *Quelimane*, 960 P.2d at 531.

Defendants' sole argument on appeal is that Plaintiffs' claims fail because a claim of tortious interference "requires a 'wrongfulness' element, such that the defendant's interfering conduct 'was wrongful by some legal measure other than the fact of interference itself.'" Defendants are incorrect. Under California law, there is no additional "wrongfulness" element for a claim of interference with existing contracts. *See id.* at 530 ("Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." (citation omitted)). Accordingly, we reverse the district court's grant of summary judgment.

### 6. *Declaratory Relief*

For the reasons noted above, we also reverse the district court's grant of summary judgment as to Plaintiffs' request for declaratory relief on the parties' rights and duties arising out of the Settlement Agreement and the COREA.

### III.    RREEF's Counterclaims

RREEF brought counterclaims against Hacienda for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. RREEF contends that Hacienda and its agents engaged in an "exhaustive campaign of opposition" to the Project, violating the Settlement Agreement's release provision and other provisions governing the parties' conduct in the City's application-approval process.

The district court granted Hacienda's motion for summary judgment on the basis that "RREEF's counterclaims are barred by California's litigation privilege." We disagree.

In California, the litigation privilege immunizes defendants from certain lawsuits based on their privileged communications in judicial proceedings and other official proceedings, including local city council proceedings. *See* Cal. Civ. Code § 47; *Cayley v. Nunn*, 235 Cal. Rptr. 385, 387 (Ct. App. 1987). The litigation privilege traditionally applied only to tort claims, and the California Supreme Court has not decided whether the privilege applies to contract claims. We understand that the California Supreme Court is currently considering whether the litigation privilege applies to contract claims, and if so, under what circumstances. *See Doe v. Olson*, Cal. Sup. Ct. No. S258498.

"In the absence of [a decision of the highest state court], a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). California's intermediate appellate courts have applied the litigation privilege to contract claims in limited situations where "its application furthers the policies underlying the privilege." *Wentland v. Wass*, 25 Cal. Rptr. 3d 109, 114 (Ct. App. 2005). These policies include "ensur[ing] free access to the courts, promot[ing] complete and truthful testimony, encourag[ing] zealous advocacy, giv[ing] finality to judgments, and avoid[ing] unending litigation." *Id.* at 115.

We conclude that the policy considerations weigh against applying the litigation privilege here.[4]  While the Settlement agreement did not clearly prohibit Hacienda's prior participation in the municipal and judicial proceedings regarding the construction of the Shopping Center, and while Hacienda's right to communicate in such proceedings is a matter of public concern, Hacienda willingly limited its communications under the Settlement Agreement.  *See id.* at 116 ("Just as one who validly contracts not to speak waives the protection of the anti-SLAPP statute, so too has he waived the protection of the litigation privilege." (citation omitted)).  California courts that have applied the litigation privilege to contract claims did so in the face of weightier policy concerns than we face here.  *See, e.g.*, *Vivian v. Labrucherie*, 153 Cal. Rptr. 3d 707, 716 (Ct. App. 2013) (communication made during investigation of potential police misconduct); *McNair v. San Francisco*, 210 Cal. Rptr. 3d 267, 281 (Ct. App. 2016) (doctor's disclosure of public safety concerns involving patient who was a bus driver).  And on the other side of the policy balance are significant concerns about the finality of settlements and the stability of contract.  *See Wentland*, 25 Cal. Rptr. 3d at 116 (refraining from applying the litigation privilege where doing so would "not encourage finality [or] avoid litigation").  Applying the litigation privilege to this case would undermine the Settlement Agreement and invite more litigation.

---

[4] If the California Supreme Court holds otherwise while this case is pending, the district court is not bound by our conclusion.  *See Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) ("Our interpretation . . . was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect.").

We note that some California courts have also held that "the privilege will apply to contract claims only if the agreement does not 'clearly prohibit' the challenged conduct." *Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Ass'n*, 222 Cal. Rptr. 3d 1, 28 (Ct. App. 2017) (quoting *Labrucherie*, 153 Cal. Rptr. 3d at 715). The counterclaims here are partly based on the Settlement Agreement's release provision, section 12, and RREEF alleges that Hacienda violated section 12 through its involvement in lawsuits opposing the Project. We conclude that section 12 is ambiguous as to whether it prohibits the lawsuits in question. Specifically, the language of section 12 is ambiguous as to (i) whether the release covers claims based on future events that occur after the date of the Settlement Agreement, and (ii) if it does, whether those later-arising claims include claims based on future versions of the Site Plan. On the one hand, section 12 contains arguably forward-looking language: "[Hacienda] releases [RREEF] from . . . [all claims] that [the Hacienda Parties] have *or may have* against [RREEF]" (emphasis added). On the other, section 12 references two specific applications for two specific Site Plans, both of which were already in existence at the time of the Settlement Agreement's execution.[5]

Thus, we conclude that the district court erred in applying the litigation privilege to grant summary judgment.

---

[5] Because section 12 is ambiguous, the district court will need to consider extrinsic evidence on remand should it need to interpret section 12. *See Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 (Ct. App. 1992).

Finally, we hold the attorneys' fees question moot and vacate the district court's January 29, 2019 Order denying the parties' motions for attorneys' fees.[6]

The parties are to bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

[6] Hacienda's Motion to Take Judicial Notice (Dkt. 36) is **GRANTED**. Defendants' Motion to File Oversized Brief (Dkt. 63) is **GRANTED**.