[No. A133167. First Dist., Div. Three. Mar. 7, 2013.]

CHRISTOPHER VIVIAN, Plaintiff and Appellant, v.
LOUISE LABRUCHERIE et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 1., 3., and 4. of the Discussion.

## COUNSEL

Perry, Johnson Anderson, Miller & Moskowitz, Michael G. Miller and Deborah S. Bull for Plaintiff and Appellant.

Abbey, Weitzenberg, Warren & Emery, Mitchell B. Greenberg and Scott R. Montgomery for Defendants and Appellants.

## OPINION

**POLLAK, J.**—Before the court are cross-appeals from an order granting in part and denying in part defendants' special motion to strike, pursuant to Code of Civil Procedure[1] section 425.16, the so-called anti-SLAPP statute. In the unpublished portion of this opinion, we conclude the court correctly dismissed plaintiff's cause of action for fraud and denied the motion to strike plaintiff's claim for intentional infliction of emotional distress. In the published portion, we conclude the court erred in failing to strike plaintiff's cause of action for breach of contract.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

## Factual and Procedural History

Plaintiff Christopher Vivian and defendant Louise Labrucherie were divorced in 2008. They have one child together. Sandra Labrucherie is Louise's mother. Christopher is a Sonoma County deputy sheriff.

The present dispute arose in 2010 when Louise's new boyfriend, Sukhdev Sidhu, referred to throughout the proceedings as "Dodi," sought a temporary restraining order (TRO) prohibiting Christopher from harassing him. In his application for the restraining order, Dodi claimed, "Threats have been made against my life and physical safety. Christopher Vivian is harassing my business contacts and family, causing harm to me. I am being followed and stalked by Christopher Vivian." Dodi explained that on December 21, 2009, Louise and Christopher's son told him, "My daddy doesn't like you because you don't work. And he's going to shoot you, pepper spray you in the eyes, cut you in half, and you can't shoot back because he wears a bullet proof vest." Dodi also claimed that on a number of occasions between October and December 2009, Christopher had followed him while driving his personal vehicle and while driving a patrol car. Christopher also allegedly contacted the chief of police in Kapurthala, Punjab, India, identified himself as a sheriff from Sonoma County and claimed that he was investigating Dodi. On February 2, 2010, the trial court issued a TRO. Although Louise was not a party to the application, she and her son were listed as protected persons in the order.

In March 2010, Dodi and Christopher executed a settlement agreement by which Dodi dismissed with prejudice his request for a permanent injunction against Christopher. Dodi and Christopher agreed, among other things, "not to disparage the other to any other party." Louise signed the agreement as follows: "Louise Labrucherie, not a party to this action, agrees to be bound to all the terms and conditions in this agreement except for any matters currently pending in family court."

On March 4, 2011, Christopher filed the present action against Louise, Sandra, and Dodi[2] alleging causes of action for fraud, breach of settlement agreement, intentional infliction of emotional distress, and conspiracy to commit a civil wrong. The complaint alleges that Louise, Sandra, and Dodi conspired to have Dodi file the TRO application for an improper purpose and that Louise and Sandra gave Dodi false information to convince him to file the application. The complaint alleges that after entry of the TRO but before execution of the settlement agreement, Christopher requested that an internal affairs investigation be opened in the Sonoma County Sheriff's Department.

---

[2] Dodi is not a party to this appeal.

Following execution of the settlement agreement, the complaint alleges, Louise voluntarily provided disparaging statements to the internal affairs department with respect to the allegations made by Dodi in the TRO application. In addition, on March 22, 2010, Louise filed papers in family court related to pending custody issues, in which she repeated some of the allegations made by Dodi in the TRO application. Louise also attached to the documents filed in family court copies of the TRO papers, representing that the facts stated in Dodi's declaration were true.

On April 7, 2011, Louise and Sandra filed the special motion to dismiss that is at issue in this appeal. The court denied the motion with regard to Christopher's causes of action for breach of the settlement agreement, intentional infliction of emotional distress, and conspiracy to commit a civil wrong, but granted the motion and struck the cause of action for fraud. Louise and Sandra filed a timely notice of appeal from the denials and Christopher filed a timely cross-appeal from the dismissal of his fraud claim.

## Discussion

■ "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) "[U]nder [Code of Civil Procedure] section 425.16, subdivision (b)(1), a defendant may move to strike '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue . . . .' " (*McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 175 [96 Cal.Rptr.3d 1].)

■ In ruling on a motion to strike under section 425.16, subdivision (b)(1), the court must engage in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating

the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Only an action that lacks all merit is subject to a special motion to strike. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier I*).) "[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Id.* at pp. 88–89.)

We review the trial court rulings on the special motion to strike de novo. (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 624 [130 Cal.Rptr.3d 410].)

1. *First Cause of Action—Fraud Against Louise Only*<sup>*</sup>

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Second Cause of Action—Breach of Settlement Agreement Against Louise Only*

Plaintiff's cause of action for breach of contract alleges that Louise breached the terms of the settlement agreement "by making voluntary statements to Christopher's employer, the Sonoma County Sheriff's Office, with respect to an Internal Affairs investigation regarding Christopher, where . . . Louise . . . raised the same allegations against Christopher that were made in Dodi's TRO application" and by "attaching the TRO as 'true' and making the same allegations that Christopher had followed and harassed Dodi in a Family Court matter."

*First Prong*

With regard to the first prong of the analysis, Louise asserts that the cause of action for breach of contract arises from protected activity because her statements to the internal affairs investigator and the documents submitted to the family court were made in connection with an issue under consideration by a judicial body or "other official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2).) Plaintiff acknowledges implicitly that Louise's statements are protected but argues that his "action for breach of settlement agreement did not arise from that conduct but was only 'triggered by' it" so that the first prong of the analysis under section 425.16 is not satisfied.

<sup>*</sup>See footnote, *ante,* page 267.

Plaintiff relies on *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695], in which the court explained, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is based on conduct in exercise of those rights.' " (Italics omitted.) Plaintiff argues that breaching an agreement "is not an [action] in furtherance of the right of petition or free speech" and that he did not file this action against Louise because she engaged in protected speech but because she breached a contract that prohibits her from engaging in certain speech-related conduct.

Plaintiff acknowledges that he did not raise this argument in the trial court, instead conceding that the cause of action arises from protected activity. He argues that we should nonetheless resolve this issue as a matter of law. He emphasizes the general rule that "if the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, the Court may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." While we do not condone plaintiff's failure to timely assert this argument, we need not rely on the doctrines of waiver or invited error, because the new contention is without merit.

Plaintiff seeks to impose liability on Louise based on her protected activity—making communications to the court and to the internal affairs investigator, which plaintiff claims constituted a breach of the settlement agreement. Plaintiff relies on *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 [123 Cal.Rptr.3d 142], to argue that this claim is not "based on" making the challenged statements but on the alleged breach of the settlement agreement, which is not a protected activity. In *City of Alhambra*, the defendant and the city entered into a settlement agreement by which the defendant agreed he would not demonstrate or advocate against the city in support of the firefighters' union. Thereafter, the defendant participated in a protest in favor of the union against the city and refused to comply with the city's demand to discontinue the activity. The city filed an action for declaratory relief, seeking a declaration that the defendant's actions were a breach of the settlement agreement. The plaintiff filed a motion to strike the declaratory relief cause of action under section 425.16. The trial court denied the motion and the Court of Appeal affirmed the denial. (193 Cal.App.4th at pp. 1304–1305.) The Court of Appeal reiterated the rule that, to be subject to an anti-SLAPP motion, the underlying cause of action must be " 'based on' " protected conduct or speech. (*Id.* at p. 1307, italics omitted.) It is not enough that the speech caused the action to be filed. (*Ibid.*) In deciding the motion the trial court must " 'distinguish between (1) speech or petitioning activity

that is mere evidence related to liability and (2) liability that is based on speech or petitioning activity.' " (*Ibid.*, italics omitted.)

The court concluded in *City of Alhambra* that the city "did not sue [the defendant] because he engaged in protected speech"; the city "sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct and a dispute exist[ed] as to the scope and validity of that contract." (*City of Alhambra v. D'Ausilio, supra*, 193 Cal.App.4th at p. 1308.) According to the Court of Appeal, the city's declaratory relief claim "involves an actual dispute between the parties regarding the validity of a contract provision and the parties' rights and obligations under that contract provision. The declaratory relief claim arises from a contract dispute; it does not arise from actions taken by [the defendant] in furtherance of his constitutional rights." (*Id.* at p. 1309; see *City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 80 [action for declaratory relief was based on controversy regarding constitutionality of local ordinance, not on the filing of another action seeking contrary declaration].)

In the present case, plaintiff's claim is not for declaratory relief to determine the disputed meaning of the settlement agreement but for damages for having allegedly breached the agreement. Plaintiff seeks to impose liability on Louise for having made her statements to the internal affairs investigators and in her family court papers. Because plaintiff is seeking to impose liability on Louise for having engaged in this protected activity, the action is "based on" that activity and comes within the scope of section 425.16. (See *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1409 [138 Cal.Rptr.3d 464] [*City of Alhambra* is distinguishable because "[t]he dispute in that case arose over the enforceability and scope of a settlement agreement and not from the plaintiff's exercise of the right of petition."].)

■ Plaintiff also asserts, for the first time on appeal, that Louise's conduct was illegal and thus not protected under section 425.16. "Unlawful or criminal activities do not qualify as protected speech or petition activities under the anti-SLAPP statute. [Citations.] But when the defendant's assertedly protected activity may or may not be unlawful, the defendant may invoke the anti-SLAPP statute unless the activity is unlawful as a matter of law. [Citation.] An activity may be deemed unlawful as a matter of law when the defendant does not dispute that the activity was unlawful, or uncontroverted evidence conclusively shows the activity was unlawful." (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711 [151 Cal.Rptr.3d 406], italics omitted; see *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089 [114 Cal.Rptr.2d 825] [court generally presumes validity of claimed constitutional right in the first stage of anti-SLAPP analysis, and leaves consideration of the truth or falsity of the defendant's challenged statements for the second

stage].) In this case, there is no conclusive evidence or concession that Louise did anything unlawful in filing her documents in the family court or giving a statement to the sheriff's investigators. Hence, there is no merit to plaintiff's attempt to avoid application of section 425.16 on this basis.[3]

*Second Prong*

Having concluded that defendant Louise has met her burden of establishing that the cause of action for breach of contract is based on her protected activity, we next consider whether plaintiff met his burden under the second prong of the analysis by establishing a likelihood of prevailing. Louise asserts that plaintiff cannot prevail because the breach of contract claim is barred by the litigation privilege, Civil Code section 47, subdivision (b). Plaintiff does not dispute that statements made in the course of an internal affairs investigation or in the course of family court proceedings would ordinarily be privileged. He argues, however, that the "agreement not to disparage waived section 425.16 and the litigation privilege, rendering Louise's . . . defense inapplicable."

■ The waiver argument requires careful consideration of at least three decisions: *Navellier I, supra,* 29 Cal.4th 82, *Navellier v. Sletten* (2003) 106 Cal.App.4th 763 [131 Cal.Rptr.2d 201] (*Navellier II*), and *Wentland v. Wass* (2005) 126 Cal.App.4th 1484 [25 Cal.Rptr.3d 109]. In *Navellier I,* the Supreme Court held that a cause of action for breach of a release agreement based on the filing of counterclaims in federal court litigation arose out of protected activity and thus satisfied the first prong of the section 425.16 analysis. (29 Cal.4th at p. 95.) However, the Court also stated that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (*Id.* at p. 94.) Because the appellate court had not reached the second prong of the analysis, the Supreme Court remanded the case to the Court of Appeal to determine whether application of the privilege had been waived and the plaintiffs had therefore established a likelihood of prevailing sufficient to defeat the motion. (*Id.* at p. 95.)

In *Navellier II,* the Court of Appeal on remand rejected the defendant's argument that the litigation privilege barred the breach of contract cause of

---

[3] Christopher's request for judicial notice of a letter to him from the internal affairs department and a settlement agreement between him and Dodi resolving the present litigation is denied. Neither document was presented to the trial court and more importantly, neither document conclusively establishes the alleged illegality of Louise's conduct. Defendant's request to augment and/or correct the record to deem a document contained in the record an order of the trial court is also denied. Although the document appears to be the court's rulings on evidentiary motions submitted in conjunction with the special motion to strike, it is not signed by the trial judge. Because this court's decision does not depend on the admissibility of any disputed evidence, remand for confirmation of the order is not necessary.

action. The court offered several reasons for its conclusion. Although recognizing that the litigation privilege has in some cases barred breach of contract claims, the court observed that "the privilege is generally described as one that precludes liability in tort, not liability for breach of contract." (*Navellier II, supra*, 106 Cal.App.4th at p. 773.) The court took note of the statement in *Navellier I*, quoted above, and further reasoned that if the privilege were applied to certain contracts "it 'may frustrate the very purpose of the contract' if there were a privilege to breach the covenant." (*Id.* at p. 774.) Although ultimately holding that the plaintiff had failed to establish the likelihood of prevailing for another reason, the court "assume[d] that the litigation privilege does not bar plaintiffs' breach of contract cause of action" for breaching the prior release agreement. (*Id.* at pp. 774–775.)

More recently in *Wentland v. Wass, supra*, 126 Cal.App.4th at page 1494, the court held that the litigation privilege did not protect voluntary statements made in the course of litigation that breached an express confidentiality agreement. The court explained that "whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege" (*id.* at p. 1492) and that the policies behind the litigation privilege would not be furthered by its application in that case (*id.* at p. 1494). "Unlike in the usual derivative tort action, application of the privilege in the instant case does not serve to promote access to the courts, truthful testimony or zealous advocacy. This cause of action is not based on allegedly wrongful conduct during litigation . . . . Rather, it is based on breach of a separate promise independent of the litigation . . . . This breach was not simply a communication, but also wrongful conduct or performance under the contract . . . . Like the example of the covenant not to sue in *Navellier II*, here application of the privilege would frustrate the purpose of the [confidentiality] agreement. [¶] Application of the litigation privilege in this case does not encourage finality and avoid litigation. In reaching settlement . . . , the parties presumably came to an acceptable conclusion about the truth of [one party's] comments about [the other's] management of the partnership. Allowing such comments to be made in litigation, shielded by the privilege, invites further litigation as to their accuracy and undermines the settlement reached in the [prior litigation]." (*Ibid.*)

■ As these cases indicate, the litigation privilege does not necessarily bar liability for breach of contract claims. Application of the privilege requires consideration of whether doing so would further the policies underlying the privilege. For two reasons, we conclude that the litigation privilege should apply in this case to bar plaintiff's breach of contract claim.

First, the agreement on which plaintiff relies does not clearly prohibit the conduct that plaintiff challenges. The purported "non-disparagement" clause.

in the settlement agreement is not as broad as Christopher suggests. The agreement states in pertinent part: "2. Both parties agree not to disparage the other to any other party. [¶] 3. Both parties further agree to withdraw any and all regulatory and/or statutory complaints filed to date. [¶] 4. Louise Labrucherie, not a party to this action, agrees to be bound by all the terms and conditions in this agreement except for any matters currently pending in family court." Under the plain language of the agreement, Louise's statements made in the family court proceedings are expressly removed from the scope of the agreement. And the language of the agreement does not expressly prohibit Louise from making statements to the internal affairs investigators. The term "disparage" is itself somewhat ambiguous[4] and the agreement merely prohibits her from disparaging Christopher "to any other party."

Second, application of the litigation privilege in this action furthers the policies underlying the privilege. In *Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753–754 [181 Cal.Rptr. 423], the court explained the purpose of the privilege with respect to police investigations: " '[T]he policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing.' [Citation.] In order for such investigation to be effective, 'there must be an open channel of communication by which citizens can call his attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. . . . [¶] The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus, the absolute privilege is essential.' "

Unlike the situations in *Wentland v. Wass* and *Navellier I* and *II*, the dispute in this case involves a significant public concern—a governmental investigation into inappropriate conduct by a police officer. The public purpose is served by application of the privilege here in a way that does not apply to statements made in many other contexts. According to the complaint, Louise responded to inquiries of an internal affairs investigator from the sheriff's department. Application of the privilege under these circumstances promotes full and candid responses to a public agency, which is very much the purpose of the privilege and in the public interest. Denying application of the privilege would have exactly the opposite effect.

■ Because we conclude that the litigation privilege applies, plaintiff cannot prevail on his breach of contract cause of action and he does not

---

[4] "Disparage" is defined variously as "to lower in rank or reputation," "to depreciate by indirect means (as invidious comparison): speak slightingly about" (Webster's New Collegiate Dict. (1979) p. 326), "treat or speak of with disrespect: belittle," and "bring discredit upon" (Funk & Wagnalls Standard Dict. (1993) p. 206.)

sustain his burden under the second prong of the anti-SLAPP analysis. Therefore, the trial court erred in failing to strike this cause of action.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Disposition

The order is reversed insofar as it denies defendants' motion to strike the second cause of action for breach of contract and is affirmed in all other respects. Defendants shall recover their costs on appeal.

McGuiness, P. J., and Siggins, J., concurred.

---

*See footnote, *ante*, page 267.