Filed 6/18/14  Gibson v. HoMedics CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FLETCHER GIBSON, | D064057 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00086916-CU-MT-CTL) |
| HOMEDICS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Reversed and remanded for further proceedings.

Crone Hawxhurst, Gerald E. Hawxhurst, Daryl M. Crone and Joshua P. Gelbart for Defendant and Appellant.

Newport Trial Group, Scott J. Ferrell and James Hardin for Plaintiff and Respondent.

Defendant HoMedics, Inc. (HoMedics) appeals an order denying its Civil Code[1] section 1717 motion for attorney fees it filed after the trial court granted its motion to

_____

[1]     All statutory references are to the Civil Code unless otherwise specified.

enforce a class action settlement agreement requiring plaintiff Fletcher Gibson to comply with his contractual obligation to cooperate in obtaining the court's final approval of the settlement. On appeal, HoMedics contends the trial court erred by denying its motion for attorney fees because: (1) Gibson breached the settlement agreement and, contrary to the positions of Gibson and the court, the agreement was not null, void, and/or unenforceable as between the parties until the court granted final approval of the settlement agreement; (2) the agreement's arbitration clause did not preclude it from filing a motion for attorney fees for successfully moving to enforce the settlement agreement; (3) as the prevailing party in its motion to enforce the settlement agreement, it is entitled to reasonable attorney fees pursuant to section 1717 and the agreement's attorney fee provision. Because we agree with HoMedics's arguments, we reverse the order denying its motion for attorney fees and remand the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Gibson filed a class action complaint against HoMedics, alleging it falsely advertised its hot and cold therapy back support as containing magnets that provide pain relief. In January 2011, the trial court issued an order granting Gibson's motion for class certification, presumably on an interim basis as Gibson represents. In November 2011, HoMedics and Gibson filed a joint motion for an order approving a class settlement agreement (CSA) of the action, attaching the CSA to their motion. Their motion requested that the trial court issue an order (1) finding the CSA fair and

2

reasonable and approving it on a preliminary basis, and (2) conditionally certifying the settlement class for settlement purposes.

The 26-page CSA provided that the parties and Gibson's counsel agreed to cooperate to obtain the trial court's preliminary and final approvals of the CSA and implementing its terms. The CSA further provided that the settlement was conditioned on the trial court's certification of the settlement class for settlement purposes and if the trial court did not grant final approval of the settlement, the court's conditional certification of the settlement class "shall be deemed null and void, and each Party shall retain all of their respective rights as they existed prior to execution of [the CSA]." It further provided that "[i]n the event that this Settlement is not approved, . . . the [CSA] shall be deemed null, void, and unenforceable . . . ." The CSA also included an arbitration clause, stating "[t]he Parties agree to binding, non-appealable arbitration . . . to resolve any disagreements over the implementation of the terms of the Settlement, [the CSA], or any other documents necessary to effectuate the Settlement." Finally, the CSA included an attorney fees provision (§ 27.10), stating: "In the event that one or more of the Parties institutes any legal action, arbitration, or other proceeding against any other party or parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions."

On November 7, 2011, the trial court granted the parties' joint motion for preliminary approval of the CSA on the condition that Gibson's counsel submit to it a

3

written preliminary approval order and revised claim form by the end of the following week. On March 9, 2012, the trial court denied Gibson's motion for final approval of the CSA because his counsel had not submitted to it a written order for preliminary approval of the CSA and had rescheduled the date of the final approval hearing without notifying the proposed class members of that new date.[2] The court also stated it had "grave concerns about the value of the case [i.e., about a $400 class recovery] and the fees submitted [i.e., Gibson's counsel's request for $564,869.09 in attorney fees and costs of $35,130.91, for a total of $600,000.00]." At the hearing on Gibson's motion, the court did not advise counsel on how they could "get this troubled settlement through the court" and left it to counsel to "fix these problems" using their "ingenuity." Gibson's counsel requested that the court set a trial date and stated they "would endeavor in the interim to try and resolve [the matter] in a way that's acceptable to the Court."

After Gibson's counsel apparently did not cooperate to timely "fix," as the court termed it, the problems preventing its final approval of the CSA, HoMedics filed a motion to enforce the CSA and require Gibson and his counsel to cooperate in obtaining final approval of the CSA.[3] The motion sought an order requiring Gibson and his

---

[2] Gibson's counsel apparently had also erroneously submitted to the court a previous version of the CSA that included in the settlement class individuals living on military bases and in United States territories.

[3] HoMedics asserts that instead of cooperating, Gibson and his counsel engaged in further discovery in the case to "run up legal fees" and his counsel filed a separate class action against it in the Riverside County Superior Court in the name of proposed class representative Brad Post (the *Post* case).

4

counsel "to participate in giving the Settlement Class Members additional notice of the settlement, opportunity to submit claims, opt out or object in writing and at a final fairness hearing held by [the trial court]." HoMedics alternatively sought an order requiring Gibson "to participate in completing steps the Court believes are necessary to have a hearing on the final approval of the CSA." The motion alleged the trial court's "interim denial" of final approval of the CSA at the March 9, 2012, hearing was the result of Gibson's errors. It alleged Gibson's counsel had since "attempted to nullify the CSA."

Gibson opposed HoMedics's motion to enforce the CSA, arguing that because the trial court denied final approval of the CSA at the March 9, 2012, hearing, the CSA was invalid and therefore not enforceable against him. In reply, HoMedics argued Gibson did not dispute that the trial court denied final approval of the CSA because of only procedural, and not substantive, errors committed by Gibson's counsel.

On August 10, 2012, the trial court granted HoMedics's motion to enforce the CSA. The court initially stated it had granted preliminary approval of the CSA, finding the settlement was fair. However, because there was no final written preliminary approval order and Gibson changed the date of the final approval hearing, it denied the motion for final approval of the CSA. The trial court ordered Gibson and HoMedics to "meet and confer and prepare a revised notice to the settlement class, as well as a preliminary approval order."

On November 13, 2012, HoMedics filed a section 1717 motion for an award of attorney fees and costs incurred in successfully enforcing the CSA against Gibson. In support of its motion, HoMedics cited section 27.10 of the CSA that provides the

5

successful party in any action or proceeding to enforce the CSA shall be entitled to recover from the unsuccessful party reasonable attorney fees and costs. HoMedics sought $170,040.61 in attorney fees and costs incurred as a result of Gibson's breach of the CSA and its successful enforcement of the CSA against him.[4]

At a November 16 hearing, the trial court granted the motion for final approval of the CSA. The court found the settlement was fair, reasonable and adequate, and instructed the parties to direct the claims administrator to pay all 33 claims filed. In a written order issued on November 26, the court stated it granted HoMedics's unopposed motion for final approval of the CSA and granted certification of the settlement class. It also approved, on a final basis, the supplemental class notice and class notice plan it had preliminarily approved on September 12. It found, on a final basis, that Newport Trial Group was class counsel for the settlement class and Gibson was the representative for the settlement class. The court reserved judgment on a determination of the class counsel's fees and costs and on HoMedics's motion for attorney fees and costs.

Gibson opposed HoMedics's section 1717 motion for attorney fees and costs, arguing: (1) HoMedics should have sought such fees and costs in a separate action or in arbitration; (2) its claim for breach of the CSA was barred by the CSA's release provisions, the litigation privilege, and the anti-SLAPP statute; and (3) Gibson and his

---

[4]    That amount apparently included $81,375.45 in attorney fees and costs incurred in defending the *Post* case and $17,427.96 in costs associated with the supplemental notice to the settlement class required in this case. HoMedics requested $88,665.16 in attorney fees and costs directly related to its enforcement of the CSA against Gibson.

counsel properly litigated the case after March 9, 2012, because the CSA became null and void when the trial court denied final approval of the CSA. In its reply, HoMedics responded to each of Gibson's arguments.

On April 2, 2013, the trial court[5] issued the Order denying HoMedics's section 1717 motion for attorney fees and costs.[6] The court explained the grounds for its ruling, stating in part:

> "This motion is denied because the [CSA] was not a final agreement at the time the motion to enforce was brought. The [CSA] specifically states that the settlement was 'conditional certification for settlement purposes only, and if for any reason the Superior Court does not grant final approval of the [CSA] . . . the certification of the Settlement Class for settlement purposes shall be deemed null and void, and each Party shall retain all of their respective rights as they existed prior to execution of this [CSA] . . .' [Citation.] Under the law, the settlement was required to be reviewed [for fairness, adequacy, and reasonableness] . . . . [¶] . . . [¶]
>
> "[HoMedics] does not cite any plaintiff misconduct after the final approval on November 16, 2012. At the time that plaintiff [sic] filed [the *Post* class action] on May 27, 2012 . . . , the court had not ordered the final approval of this class action. Though very disturbing while this case was still pending, [HoMedics's] fee request [related to the *Post* action] should have been brought in Riverside [County] Superior Court, or[,] alternatively, before the arbitrator.

---

5    After the November 26, 2012, order granting final approval of the CSA was issued by San Diego County Superior Court Judge Jeffrey B. Barton, the case was reassigned to San Diego County Superior Court Judge Joel M. Pressman, who heard HoMedics's section 1717 motion and issued the minute order (Order).

6    In the Order, the trial court also granted, in part, Gibson's motion for attorney fees and costs and awarded his counsel $250,000 for attorney fees and $35,130.91 for costs and expenses, which amounts were substantially less than the $600,000 sought.

7

"[HoMedics] waived its right to claim fees before the arbitrator by filing in this court the motion to enforce the settlement. The [CSA provides for arbitration to resolve any disagreements over the implementation of the terms of the CSA, the CSA, or any other documents necessary to effectuate the settlement]."

The court cited section 27.10 of the CSA, which provides for awards of reasonable attorney fees and costs to the successful party in any action or proceeding to enforce the provisions of the CSA or to declare rights and/or obligations under the CSA. The court noted HoMedics did not expressly seek attorney fees in its motion to enforce the CSA. The court denied HoMedics's section 1717 motion for attorney fees and costs incurred in successfully enforcing the CSA. HoMedics timely filed a notice of appeal challenging the Order.

DISCUSSION

I

*Enforceability of CSA*

HoMedics contends the trial court erred by denying its section 1717 motion for attorney fees and costs because it was contractually entitled to attorney fees and costs after Gibson breached the CSA and it successfully moved to enforce the CSA. It further asserts that, contrary to the positions of Gibson and the court, the CSA was not null, void, and/or unenforceable as between the parties until the court granted final approval of the settlement agreement.

A

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington Productions, Inc. v.*

8

*Flick* (1998) 60 Cal.App.4th 793, 810.)  " 'A bilateral contract consists of mutual promises, made in exchange for each other by each of the two contracting parties.' [Citation.]  A contractual promise is defined as 'an expression of commitment to act in a specified way, or to bring about a specified result in the future, or to take responsibility that the result has occurred or will occur, communicated in such a way that the addressee of the expression may justly expect performance and may reasonably rely thereon.' "  (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 36.)  In a bilateral contract, "mutuality of obligation must exist where the exchange of promises between promisor and promisee is meant to represent the contract's consideration."  (*Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 637.)

Under contract law, an obligation is conditional when the rights or duties of a party depend on the occurrence of an uncertain event.  (§ 1434.)  "Conditions may be precedent, concurrent, or subsequent."  (§ 1435.)  "Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event.  [Citations.]  Thus, a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises."  (*Platt Pacific, Inc. v. Anderson* (1993) 6 Cal.4th 307, 313; see also § 1436.)  Conditions concurrent are conditions that are mutually dependent and are to be performed at the same time.  (§ 1437.)  "A condition subsequent is one referring to a future event, upon the happening of which the

9

obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition."  (§ 1438.)

B

The CSA is a settlement contract subject to general principles of contract law. Based on our review of the CSA's provisions, it is a bilateral contract between Gibson and HoMedics that contains mutual promises or covenants of performance by each party. Those mutual promises or covenants include the agreement of Gibson and his counsel to cooperate with HoMedics in obtaining the trial court's preliminary and final approvals of the settlement set forth in the CSA and implementing its terms.  Section 3.9 of the CSA provides in part: "The *Parties agree to cooperate and take all steps necessary and appropriate to obtain* preliminary and *final approval of this Settlement*, to effectuate its terms, and, to the extent of the obligations set forth in Section 13, to dismiss this Litigation against HoMedics with prejudice."  Section 18.1 of the CSA further provides:

> "The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to execution of all necessary documents, and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate the terms of this Settlement.  As soon as practicable after execution of this Settlement, Class Counsel shall, with the assistance and cooperation of HoMedics and its counsel, take all necessary steps to secure the Court's Final Judgment."

Therefore, on execution of the CSA by the parties, Gibson and his counsel were obligated to cooperate and take all necessary and appropriate steps to obtain the trial court's preliminary and final approvals.

10

On November 7, 2011, the trial court granted the parties' joint motion for preliminary approval of the CSA on the condition that Gibson's counsel submit to it a written preliminary approval order and revised claim form by the end of the following week. On March 9, 2012, the trial court denied Gibson's motion for final approval because his counsel had not submitted to it a written order for preliminary approval of the CSA and had rescheduled the date of the final approval hearing without notifying the proposed class members of that new date. After Gibson and his counsel apparently did not timely correct those procedural deficiencies that prevented the trial court from granting final approval of the CSA, HoMedics filed a motion to enforce it and require Gibson and his counsel to cooperate in obtaining final approval. On August 10, by granting HoMedics's motion to enforce the CSA, the trial court implicitly found Gibson and his counsel had not satisfied their contractual obligations to cooperate and take all necessary and appropriate steps to obtain its final approval. On November 26, after Gibson and his counsel apparently cooperated and corrected the procedural deficiencies, the trial court granted HoMedics's unopposed motion for final approval of the CSA and granted certification of the settlement class.

By denying HoMedics's section 1717 motion for attorney fees and costs, the trial court implicitly concluded that at the time of HoMedics's motion to enforce the CSA, Gibson and his counsel did not have a contractual obligation to cooperate in obtaining final approval "because the [CSA] was not a final agreement at the time the motion to enforce was brought." In support of its conclusion, the court cited language from section 4.2 of the CSA, which provided that if the trial court did not grant final approval of the

11

settlement, the court's conditional certification of the settlement class "shall be deemed null and void, and each Party shall retain all of their respective rights as they existed prior to execution of [the CSA]." However, as HoMedics asserts, that provision does *not* provide that all of the parties' obligations under the CSA are null and void if the court does not grant final approval. Rather, it provided only that the court's conditional class certification shall be null and void.

Although the trial court did not expressly cite it, section 20.1 of the CSA further provided that "[i]n the event that this Settlement is not approved, . . . the [CSA] shall be deemed null, void, and unenforceable . . . ." However, there is no language in the CSA specifying a certain date by which it must be finally approved and, if not, providing that the CSA becomes null, void, and unenforceable thereafter. More importantly, there is no language stating that if the trial court initially denies a motion for final approval because of certain procedural defects and later grants final approval, the CSA is null, void, and/or unenforceable during that period from its initial denial until its grant of final approval. Based on our reading of the CSA's provisions, it cannot reasonably be construed that the parties' mutual obligations under the CSA to cooperate and take all necessary and appropriate steps became unenforceable on the trial court's initial denial of final approval based on procedural deficiencies resulting from actions and/or omissions by Gibson and his counsel. Similarly, the CSA cannot reasonably be construed as becoming entirely null and void according to its terms in that event.

We interpret the CSA as obligating Gibson and his counsel to continue to cooperate in efforts to obtain final approval even after the trial court's initial denial of

12

final approval of the CSA for procedural deficiencies. In the circumstances of this case, the procedural deficiencies that prevented the trial court from initially granting final approval could be corrected with relatively simple actions, which actions presumably were taken before the trial court ultimately granted final approval of the CSA. There is no language in the CSA that can reasonably be construed as relieving Gibson and his counsel of their contractual obligations to cooperate and take all necessary and appropriate steps to obtain the trial court's final approval, if the trial court initially denies final approval of the CSA based on procedural deficiencies. By granting HoMedics's motion to enforce the CSA against Gibson, the trial court implicitly reached the same conclusion. Alternatively stated, by granting HoMedics's motion to enforce the CSA, the trial court implicitly found Gibson had breached his obligations under the CSA to cooperate and take all necessary and appropriate steps to obtain final approval. Gibson's conclusory argument to the contrary is not persuasive. In subsequently denying HoMedics's section 1717 motion for attorney fees and costs, the trial court's reasoning was inconsistent with its prior order enforcing the CSA against Gibson. To the extent the trial court concluded the CSA was null, void, and/or unenforceable at the time of HoMedics's motion to enforce the CSA against Gibson and his counsel and denied the section 1717 motion based thereon, the trial court erred.

II

*Arbitration Clause*

HoMedics contends the trial court erred by denying its section 1717 motion for attorney fees and costs based on the CSA's arbitration clause. It asserts Gibson waived

13

any right to arbitrate HoMedics's section 1717 motion by not filing a motion to compel arbitration of its motion to enforce the CSA and/or its section 1717 motion.

In denying HoMedics's section 1717 motion, the trial court expressly found: "[HoMedics] waived its right to claim fees before the arbitrator by filing in this court the motion to enforce the [CSA]." However, the court did not expressly make any finding whether *Gibson* waived his contractual right to require arbitration of HoMedics's motion to enforce and/or its section 1717 motion. Nevertheless, the court's finding that HoMedics waived its right to arbitrate the motion to enforce supports a reasonable inference that the court likewise would have found Gibson waived his right to arbitrate the motion to enforce and/or section 1717 motion by opposing and otherwise litigating those motions. In any event, to the extent the Order denying HoMedics's section 1717 motion includes an implicit finding that Gibson did not waive his arbitration right, we conclude the trial court erred.

Section 27.8 of the CSA provides: "The Parties agree to binding, non-appealable arbitration . . . to resolve any disagreements over the implementation of the terms of the Settlement, [the CSA], or any other documents necessary to effectuate the Settlement. The Parties will split evenly the costs of the arbitration." Contrary to HoMedics's assertion, we conclude that arbitration provision does not apply solely to "implementation of the terms of the Settlement," but rather also applies to "disagreements over . . . [the CSA]." HoMedics's motion to enforce the CSA clearly involved a disagreement over the CSA -- namely, Gibson's obligations to cooperate with HoMedics and take all necessary and appropriate steps to obtain the trial court's final approval of the CSA. Therefore, had

14

Gibson intended to enforce the CSA's arbitration provision, he presumably would have filed a motion to compel arbitration of HoMedics's motion to enforce the CSA. However, by not filing a motion to compel arbitration and instead opposing and otherwise litigating the motion to enforce in the trial court, Gibson implicitly waived and/or forfeited his right to enforce the CSA's arbitration provision and require arbitration of HoMedics's motion to enforce the CSA against him. To the extent the trial court implicitly found otherwise, there is insufficient evidence to support that finding. (Cf. *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [six-factor test for waiver of arbitration right]; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 448-449 [litigation of matter by party in court supports finding of party's waiver of arbitration right].)

Likewise, regarding HoMedics's section 1717 motion, had Gibson intended to enforce the CSA's arbitration provision, he presumably would have filed a motion to compel arbitration of that section 1717 motion. However, by not filing a motion to compel arbitration and instead opposing and otherwise litigating the section 1717 motion in the trial court, Gibson implicitly waived and/or forfeited his right to enforce the CSA's arbitration provision and require arbitration of HoMedics's section 1717 motion.[7] (Cf. *St.*

---

7    In opposing HoMedics's section 1717 motion, Gibson argued that "HoMedics'[s] motion is necessarily encompassed by the mandatory arbitration provision of the [CSA]." Gibson argued that section 27.8 of the CSA required HoMedics "to initiate arbitration to assert its claims that Plaintiffs or Class Counsel did not properly implement the terms of the [CSA]." However, as discussed above, Gibson waived and/or forfeited his contractual right to require arbitration of HoMedics's motion to enforce the CSA. The fact that *HoMedics* did not move to compel arbitration of its motion to enforce the CSA

15

*Agnes Medical Center v. PacifiCare of California*, *supra*, 31 Cal.4th at p. 1196; *Lewis v. Fletcher Jones Motor Cars, Inc.*, *supra*, 205 Cal.App.4th at pp. 448-449.)  Because Gibson did not file a motion to compel arbitration of either of HoMedics's motions (i.e., to enforce the CSA or for § 1717 attorney fees) and instead opposed and otherwise litigated those motions, Gibson waived and/or forfeited his right to require arbitration of those motions under section 27.8 of the CSA.  To the extent the trial court implicitly found otherwise, there is insufficient evidence to support that finding.  To the extent the trial court relied on the CSA's arbitration clause as a basis on which to deny HoMedics's section 1717 motion, we conclude it erred.

### III

### *HoMedics as Prevailing Party under Section 1717*

HoMedics contends the trial court erred by denying its section 1717 motion for attorney fees and costs because as the prevailing, or "successful," party in its motion to enforce the settlement agreement, it is entitled to reasonable attorney fees and costs pursuant to section 1717 and the CSA's attorney fee provision.

### A

Section 27.10 of the CSA sets forth an attorney fees provision, stating: "In the event that one or more of the Parties institutes any legal *action*, arbitration, *or other proceeding* against any other party or parties *to enforce the provisions of this Settlement*

---

did not preclude the trial court from considering the merits of that motion as both parties implicitly waived their rights to require arbitration by not filing motions to compel arbitration.

16

or to declare rights and/or obligations under this Settlement, the *successful* party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions." (Italics added.)

Section 1717 is the reciprocal attorney fee statute and sets forth procedures for obtaining attorney fee awards based on contracts, providing in pertinent part:

> "(a) In any action on a contract, whether the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶]

> "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit. [¶] . . . [¶]

> "(b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section."

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.) "[W]hen the results of the litigation on the contract claims are *not* mixed--that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other--the Courts of

17

Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant. Thus, when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 875-876.) "The prevailing party determination is to be made only *upon final resolution of the contract claims* and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Id.* at p. 876, italics added.)

B

We conclude the trial court erred in denying HoMedics's section 1717 motion for attorney fees and costs. Section 27.10 of the CSA clearly sets forth an attorney fee provision that is subject to section 1717's provisions. Specifically, the "successful," or prevailing, party in any action or other proceeding to enforce the CSA is entitled under that contract to an award of reasonable attorney fees and costs. Based on our review of the record, HoMedics was the "successful" party on its motion to enforce the CSA. Because the trial court granted HoMedics's motion to enforce the CSA and directed Gibson to, in effect, cooperate and take steps to correct the procedural deficiencies that prevented the court from granting final approval, HoMedics obtained all the relief it sought in the proceedings on its motion. Furthermore, HoMedics's motion to enforce the CSA apparently was the only contract action or proceeding in the instant litigation. Therefore, under section 27.10 of the CSA and section 1717, HoMedics is entitled to an award of reasonable attorney fees and costs incurred in the litigation on its motion to enforce the CSA. (*Hsu v. Abbara*, *supra*, 9 Cal.4th at pp. 875-876.) To the extent the

18

trial court implicitly found HoMedics was not the successful, or prevailing, party on its motion to enforce the CSA, it erred.

To the extent Gibson argues HoMedics's motion to enforce the CSA was not an "action" on the contract within the meaning of section 27.10 of the CSA or section 1717 because that claim should have been raised in a separate complaint for breach of contract, he does not cite any authority persuading us HoMedics's motion could not be filed in the instant action. On the contrary, for purposes of judicial efficiency, it would make little sense to require HoMedics, in the midst of attempting to effectuate the settlement of a class action against it, to file a separate action to enforce the agreement for that settlement. HoMedics's motion to enforce the CSA was, in effect, a proceeding directly related to the instant action and was properly addressed to the trial court in this case. Furthermore, regardless of its form, HoMedics's motion to enforce the CSA was, in effect, an "action . . . or other proceeding" to enforce the provisions of the settlement agreement within the meaning of section 27.10 of the CSA. Given the circumstances of this case, HoMedics's motion was the most logical means or procedure by which to obtain a court order enforcing the CSA and requiring Gibson to comply with his contractual obligation to cooperate in obtaining final approval. HoMedics was not, and should not have been, required to file a separate complaint instituting a separate action to enforce the CSA in the circumstances of this case. We conclude its motion to enforce the CSA was an action or other proceeding within the meaning of section 27.10. Therefore, on remand of this matter, the trial court shall conduct further proceedings and, in its

19

discretion, award HoMedics those reasonable attorney fees and costs incurred in successfully prosecuting its motion to enforce the CSA.

IV

*Gibson's Additional Arguments*

Gibson asserts there are other grounds on which the trial court's order can be affirmed. He argues: (1) HoMedics released its breach of contract claim in the CSA; (2) the section 47 litigation privilege applies to bar its breach of contract claim; (3) its motion to enforce the CSA was barred by the anti-SLAPP statute (Code Civ. Proc., § 425.16); and (4) its motion to enforce the CSA was actually a motion for reconsideration of the court's initial denial of final approval of the CSA.

A

Gibson argues that when the trial court granted final approval of the CSA in November 2012, the release provisions of the CSA became effective and thereafter barred all of the parties' claims against each other, including HoMedics's prior claim for his breach of the CSA (i.e., its motion to enforce the CSA). Section 15.2 of the CSA set forth those claims released by HoMedics. Section 15.2.1 provided:

> "Subject to final approval by the Court of the Settlement . . . , HoMedics does hereby irrevocably *release*, acquit, and forever discharge *all Releasing Settlement Class Members* of and from *any and all claims*, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, *causes of action*, obligations, or liability *that could have been asserted but were not asserted as a compulsory counterclaim against Releasing Settlement Class Members in the Litigation*." (Italics added.)

20

To the extent Gibson's argument relies on section 15.2.1 of the CSA, that release provision does *not* apply to HoMedics's motion to enforce the CSA after Gibson failed to cooperate with it and take all necessary and appropriate steps to obtain final approval. First, HoMedics's motion to enforce the CSA was based on Gibson's acts and/or omissions *after* it was executed by the parties. Because a release generally is not effective for claims based on conduct arising after the release, section 15.2.1 of the CSA did not release Gibson for his subsequent breach. Furthermore, section 15.2.1 of the CSA applies only to claims that would have been required to be filed as compulsory counterclaims against the class members, including Gibson. However, HoMedics's motion to enforce the CSA based on Gibson's breach of it is not a compulsory counterclaim and therefore was not released by HoMedics. Gibson does not persuade us that section 15.2.1 released him from his breach of the CSA.

Gibson argues that section 15.2.2 of the CSA released him from any claim by HoMedics for his breach of the CSA. That section provides that HoMedics releases "all claims related to conduct in *discovery* in the Litigation . . . ." (Italics added.) However, because HoMedics's motion to enforce and require Gibson to cooperate in obtaining final approval of the CSA did *not* involve any claim regarding his conduct in discovery, section 15.2.2 did not release Gibson for claims arising out of his breach by not cooperating in obtaining final approval of the CSA.[8]

_____

[8]    Gibson also cites section 15.2.3 of the CSA as releasing him for his breach of the CSA, but he provides no substantive analysis of that provision and does not explain how

Gibson also apparently argues his counsel was not a party to the CSA and therefore could not be held liable for breach of the CSA and/or subject to the trial court's order granting HoMedics's motion to enforce the CSA and, in any event, his counsel was released by the CSA's provisions. However, because the trial court apparently did not make any express finding that Gibson's counsel was liable for breach of the CSA and/or for HoMedics's reasonable attorney fees and costs incurred in moving to enforce the CSA, we decline to address that issue at this point and leave that question for the parties to argue, and the trial court to decide in the first instance, on remand of this matter.

B

Gibson argues the litigation privilege set forth in section 47 applies to bar HoMedics's breach of contract claim underlying its motion to enforce the CSA and therefore he cannot be held liable for its reasonable attorney fees and costs incurred in moving to enforce the CSA. He argues his counsel's decisions and communications while conducting the class action are covered by the litigation privilege. However, Gibson does not cite any case or other authority that interprets section 47 as broadly as he asserts. On the contrary, as HoMedics argues, section 47 does *not* generally apply to all actions or omissions by class counsel in carrying out the provisions of a class settlement, including steps taken to obtain a trial court's final approval of a settlement agreement. Rather, the section 47 litigation privilege is intended to protect speech made during the course of litigation and does so by protecting litigants "from *tort liability* [e.g.,

_____

his breach falls within that provision. Accordingly, he has not carried his burden on appeal to show that release provision applies to his breach of the CSA.

22

defamation liability] any publication made in connection with a judicial proceeding."
(*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952.) The litigation privilege generally does not protect litigants or other parties from breach of contract or other non-tort liability. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 773 ["[T]he [litigation] privilege is generally described as one that precludes liability in tort, not liability for breach of contract."].) Because HoMedics's motion to enforce the CSA was not based on tort principles, but instead on contract principles, section 47 does not exempt Gibson from contract liability for reasonable attorney fees and costs incurred in HoMedics's motion to enforce the CSA. (Cf. *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 673 ["Richmond is not being sued in tort based on a publication it made in connection with a judicial proceeding. Rather, it is being sued in contract for breaching two settlement agreements. The litigation privilege simply does not apply."]; *Navellier*, *supra*, at p. 774 [litigation privilege should not apply if it would frustrate the very purpose of the contract and be, in effect, a privilege to breach the contract].)

Although there may be special circumstances in which the litigation privilege may apply to bar a breach of contract claim, Gibson has not persuaded us that an exception to the general rule should apply in the circumstances of this case. Furthermore, the cases cited by Gibson are factually inapposite to this case and do not persuade us to reach a contrary conclusion. (See, e.g., *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1497 [litigation privilege applied to bar breach of contract claim based on filing of unlawful detainer action]; *Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267,

23

277-278 [statements made to law enforcement internal affairs investigator involved significant public concern and were protected by litigation privilege against breach of contract claim].)

C

Gibson argues the anti-SLAPP statute (Code Civ. Proc., § 425.16) applies to bar liability for his breach of the CSA, including reasonable attorney fees and costs incurred by HoMedics in enforcing the CSA. Citing *Vivian v. Labrucherie*, *supra*, 214 Cal.App.4th 267 and *Feldman v. 1100 Park Lane Assoc.*, *supra*, 160 Cal.App.4th 1467, he argues, in a conclusory manner, that HoMedics's motion for attorney fees and costs based on his breach of the CSA is barred by the anti-SLAPP statute for reasons similar to those that make it barred by the litigation privilege. However, as discussed above, we are not persuaded by any of Gibson's reasons for application of the litigation privilege to bar HoMedics's claim and we are likewise not persuaded those reasons support application of the anti-SLAPP statute to bar its claim. Furthermore, Gibson did not object when HoMedics filed its motion to enforce the CSA and the trial court heard and decided that motion, and he did not timely file any anti-SLAPP motion below as required by Code of Civil Procedure section 425.16, subdivision (f). We conclude the anti-SLAPP statute does not apply to bar HoMedics's section 1717 motion for reasonable attorney fees and costs incurred in successfully moving to enforce the CSA.

D

Finally, Gibson argues that HoMedics's motion to enforce the CSA was treated by the trial court as a motion for reconsideration of its initial denial of final approval of the

24

CSA and therefore was not, in effect, a breach of contract claim to which the CSA's attorney fees provision applies. However, our reading of the trial court's August 10, 2012, order granting HoMedics's motion to enforce the CSA does *not* support Gibson's suggested interpretation. On the contrary, the language of that order consistently treats HoMedics's motion as one to enforce the CSA and, in granting the motion, expressly orders Gibson and HoMedics to prepare a revised notice to the settlement class and prepare a preliminary approval order for the court's signature.

## DISPOSITION

The order denying HoMedics's motion for attorney fees and costs is reversed and the matter is remanded for further proceedings consistent with this opinion. HoMedics is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

25