Filed 11/14/22 Seidl v. Cohesity CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RANDALL SEIDL, Cross-complainant and Respondent, v. COHESITY, INC., Cross-defendant and Appellant. | H048981 (Santa Clara County Super. Ct. No. 19CV348133) |

Appellant Cohesity, Inc. (Cohesity) sent a letter to respondent Randall Seidl demanding that Seidl remit to Cohesity his profit on Cohesity stock that he had sold notwithstanding Cohesity's prior right to repurchase it.  Seidl did not comply with this demand.  Cohesity then sued Seidl for breach of contract and related causes of action. Seidl responded with a cross-complaint against Cohesity for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.  Cohesity moved to strike Seidl's breach of contract and breach of the implied covenant causes of action under Code of Civil Procedure section 425.16 (anti-SLAPP or section 425.16 motion).[1]  The trial court found that Seidl's causes of action did not arise from protected activity and denied Cohesity's motion.

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

On appeal, Cohesity contends that Seidl's two causes of action are based solely on protected activity, namely, Cohesity's demand letter and its lawsuit against Seidl. We agree. We further decide that Seidl's causes of action lack minimal merit because they are barred by the litigation privilege. Accordingly, we reverse the trial court's order and remand with directions to grant Cohesity's anti-SLAPP motion and to award Cohesity its attorney fees and costs.

## I. FACTS AND PROCEDURAL BACKGROUND

Cohesity is an enterprise software company. In July 2015, Seidl began serving on Cohesity's advisory board. Cohesity granted Seidl stock options for 70,274 shares of Cohesity stock in return for this work. The vesting schedule of Seidl's stock options was tied to his continued work on the advisory board. The agreement between Cohesity and Seidl provided that, beginning in July 2015, 1/36 of the shares would vest each month during Seidl's service on Cohesity's advisory board. The agreement permitted Seidl to exercise the options (i.e., purchase) prior to their vesting.

Under the agreement, if Seidl were terminated, Cohesity had the right to repurchase any unvested shares from him. Upon his termination, Cohesity's repurchase of such shares was automatic unless Cohesity specifically notified Seidl it had elected not to repurchase the unvested shares. The agreement provided, "The Company shall be deemed to have exercised its Repurchase Right automatically for all Subject Shares as of the Termination Date, unless within ninety (90) days thereafter, the Company notifies the holder of the Subject Shares pursuant to Section 16 that it will not exercise its Repurchase Rights as to some or all of the Subject Shares."

In September 2015, Seidl exercised all of his options, including the unvested ones. His service on Cohesity's advisory board was terminated in June 2016 after only 11 months. Many of his Cohesity shares had not yet vested. In 2018, Seidl sold most of his Cohesity shares, including most of the unvested ones, for a net gain of $654,248.

2

On February 21, 2019, Timothy Robbins, Cohesity's general counsel, sent a letter to Seidl entitled "Repurchase of Unvested Shares." The letter began: "I am writing you concerning an error related to your exercise and subsequent sale of unvested shares in [Cohesity] and to request your cooperation in correcting the error. [¶] On September 21, 2015, you purchased 70,274 shares (the 'Shares') of Common Stock of Cohesity pursuant to a stock option agreement dated August 18, 2015 (the 'Option Agreement'). The Shares are subject to repurchase by the Company, which repurchase right lapses in accordance with your continuous service to the Company. [¶] . . . The Option Agreement provides that unvested shares are to be repurchased automatically unless the Company notifies you to the contrary, which it did not. [¶] On October 26, 2018, you purported to sell a total of 66,760 shares of common stock (comprised of all of your Vested Shares plus 45,288 Unvested Shares) via a tender offer, which contained an error that we believe should have been apparent to you at the time. The portion of the net proceeds that you received from your unwarranted sale of Unvested Shares equals $443,822.40. [¶] Because we cannot fully unwind your errant sale of Company stock, we are instead requesting that you promptly remit $405,268.82 (the net proceeds minus the contractual repurchase price) to Cohesity via enclosed wire instructions. Once received, Cohesity will send you amended tax forms. [¶] Prior to sending this letter, we researched the legalities of this matter and conclusively determined that Cohesity is entitled to this restitution that we are seeking, both as a matter of law and contract. Aside from the legalities, I am sure that you will also appreciate that your errant gain was not earned via service to Cohesity and does not truly belong to you. I am hopeful that we can get this resolved expeditiously and cooperatively and am thus sparing you from any legal demands at this time. Meanwhile, as I'm sure you'll understand, we are reserving all rights and will take whatever actions are required to remediate this situation."

On March 5, 2019, Robbins sent an e-mail to Seidl asking him to confirm receipt of the February letter. Seidl did not respond. On March 27, Robbins sent another e-mail

3

to Seidl. This one read: "Please respond to the below email [attaching the prior letter and email] or I will be forced to escalate to our external legal advisors." On March 29, 2019, without having responded to any of the communications from Robbins, Seidl filed an action against Cohesity in Massachusetts.[2]

In May 2019, Cohesity filed an action against Seidl in Santa Clara County seeking to recover $405,268.82, the amount that its February letter had asked Seidl to remit. Seidl filed a cross-complaint countering Cohesity's claims. Seidl's July 2020 cross-complaint alleged three causes of action: declaratory relief; breach of contract; and breach of the implied covenant of good faith and fair dealing.

Seidl's cross-complaint alleged that when he left the advisory board, Cohesity's chief operating officer expressly waived Cohesity's repurchase rights to the unvested shares. He also alleged that he had continued to assist Cohesity for two more years after he left its advisory board. Seidl alleged that Cohesity did not attempt to exercise its repurchase rights before he sold his shares in 2018. He alleged that, under the agreement, there was a 90-day deadline for Cohesity to repurchase unvested shares.

Seidl's breach of contract cause of action alleged that Cohesity had breached the contract "by, among other things, attempting to exercise its repurchase rights long after their lapse and attempting to recover funds from Seidl's sale of Cohesity shares to which Cohesity is not entitled pursuant to the Option Agreement." The breach of the implied covenant of good faith and fair dealing cause of action alleged that Cohesity had breached the implied covenant "by, among other things, telling Seidl 'not to worry' about his shares of Cohesity [when he left the advisory board], attempting to exercise rights which it did not have, attempting to claim entitlement to $405,268.82 in stock sale proceeds contrary to the parties' agreement and the representations of its duly authorized

---

[2] This action was later dismissed.

4

officers in order to secure a substantial and unwarranted economic benefit for itself at Seidl's expense."

In August 2020, Cohesity filed a motion to strike Seidl's breach of contract and breach of the implied covenant causes of action under section 425.16. Cohesity asserted that Seidl's causes of action were "based on Cohesity sending him a demand letter requesting that he return those proceeds, and subsequently filing a lawsuit," both of which were protected activity. Cohesity also maintained that Seidl's causes of action lacked minimal merit because they were barred by the litigation privilege.[3] Cohesity's motion was accompanied by a declaration from Robbins, who declared that Seidl had never responded to his letter or e-mails.

In November 2020, Seidl filed an opposition to Cohesity's motion to strike. He maintained that Robbins's February 2019 letter, "attempting to exercise Cohesity's repurchase right," was the breach of contract and was not protected activity. Seidl also argued that his causes of action had merit and were not subject to the litigation privilege. Seidl submitted his own declaration in support of his opposition. He declared that, shortly after the June 2016 termination of his advisory board position, Cohesity's chief operating officer "told me 'don't worry about the stock,' or words to that effect, which I understood to mean that Cohesity was electing not to repurchase any of my shares and waiving its rights to do so."

The trial court denied Cohesity's anti-SLAPP motion. The court decided that neither the breach of contract nor the breach of implied covenant cause of action "arise[s] from the filing of Cohesity's complaint or the demand letter and subsequent communications by attorney Robbins. Instead, the gravamen of these claims is Cohesity's attempt to exercise its repurchase rights in violation of the Option Agreement. Seidl alleges any such attempt constitutes a breach of contract as the time for exercising

---

[3] Cohesity's reply was consistent with its motion.

5

those rights has elapsed. That breach would exist independent of any action filed by Cohesity or demand letters by attorney Robbins proposing a threat of litigation. The mere fact that a demand letter may have triggered the filing of the cross-complaint does not mean these causes of action arise from such conduct." The court did not address whether Seidl's causes of action had merit.

Cohesity timely filed a notice of appeal from the trial court's denial of its anti-SLAPP motion.

## II. DISCUSSION

A. *Legal Framework*

" 'We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.' [Citation.] We consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence ' " ' "only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " ' " (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 759 (*Laker*).)

"If a defendant brings a special motion under the anti-SLAPP statute to strike a cause of action, the trial court evaluates that motion using a two-step process: The first examines the nature of the conduct that underlies the plaintiff's allegations to determine whether the conduct is protected by section 425.16; the second assesses the merits of the plaintiff's claim. [Citation.] [¶] In the first step of the analysis, the trial court determines whether the cause of action 'arises from' an ' " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " ' [Citation.] The first step of the anti-SLAPP analysis 'turns on two subsidiary questions: (1) What conduct does the challenged cause of action "arise[] from"; and (2) is that conduct "protected activity" under the anti-SLAPP statute?' " (*Laker*, *supra*, 32 Cal.App.5th at pp. 759–760.)

6

" '[A]rising from' means 'based on.' " (*Laker*, *supra*, 32 Cal.App.5th at p. 760.) Conduct is " 'protected activity' " if it falls within one of the categories set forth in section 425.16, subdivision (e). (*Ibid.*) Cohesity, as the moving party, bore the burden on the first prong: it was required to make a prima facie showing that Seidl's causes of action *arose from protected activity*. (*Ibid.*) If Cohesity satisfied the first prong, the burden would shift to Seidl on the second prong. Seidl's causes of action would be stricken unless he showed that they had " 'at least "minimal merit." ' " (*Ibid.*)

" '[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether the speech constitutes the wrong itself or is merely evidence of a wrong, 'in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Laker*, *supra*, 32 Cal.App.5th at p. 763.)

B. *First Prong: Did Seidl's Causes of Action Arise From Protected Activity?*

Cohesity maintains that Seidl's breach of contract and breach of the implied covenant of good faith and fair dealing causes of action were based on Cohesity's letter and its lawsuit against Seidl, both of which were protected activity. Cohesity contends Seidl's claims "necessarily depend on Cohesity's demand that Seidl return his wrongfully obtained funds in Cohesity's prelitigation correspondence and lawsuit." Seidl, on the other hand, maintains that Cohesity's letter was not protected activity and that his claims were not based on the letter or the lawsuit but on Cohesity's "conduct in breaching the contract." Seidl argues that his claims arose out of Cohesity's "wrongful position" that it had a right to repurchase his unvested shares.

We first address whether Cohesity's February 2019 letter was protected activity. Seidl acknowledges that prelitigation communications may be protected activity. He

7

claims that this letter did not qualify as protected activity because it did not relate to litigation that was contemplated in good faith and under serious consideration.

"Prelitigation communications may constitute protected activity, but only if those communications are 'relate[d] to litigation that is contemplated in good faith and under serious consideration.' [Citation.] Litigation is not ' "under [serious] consideration" ' if it is only a ' "possibility." ' [Citation.] Statements made in connection with issues that later become subject to consideration or review in litigation may be protected under the anti-SLAPP statute, but only where such prelitigation statements were made in good faith anticipation of litigation under serious consideration at the time the statements were made." (*People ex rel. Allstate Ins. Co. v. Rubin* (2021) 66 Cal.App.5th 493, 499.) "[P]ayment demands with vague references to future ' "legal remedies" ' may not demonstrate that litigation was actually under serious consideration." (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 941.)

The February 2019 letter conveyed Cohesity's serious and good faith intent to pursue litigation if Seidl did not promptly remit the requested funds. The letter stated: "Prior to sending this letter, we *researched the legalities of this matter and conclusively determined* that Cohesity is entitled to this restitution that we are seeking, both as a matter of law and contract. . . . I am hopeful that we can get this resolved expeditiously and cooperatively and am thus *sparing you from any legal demands at this time.* Meanwhile, as I'm sure you'll understand, *we are reserving all rights and will take whatever actions are required to remediate this situation*." (Italics added.)

Robbins's declaration underscored Cohesity's intent to bring legal action if the letter failed. "I contemplated that Cohesity may need to engage in litigation to recover the proceeds of Mr. Seidl's sale of unvested option shares to which Cohesity was entitled, if Mr. Seidl were unresponsive or uncooperative. My reference to Cohesity being forced to escalate the matter to its external legal advisors in my March 27, 2019 email was

intended to inform Mr. Seidl that Cohesity would institute litigation should he continue to ignore Cohesity's correspondence."

We conclude that Cohesity satisfied its burden of making a prima facie showing that Cohesity's February 2019 letter from its general counsel was protected as prelitigation communication related to litigation under serious consideration that Cohesity contemplated in good faith. As Seidl concedes that Cohesity's lawsuit against him was protected activity, we consider whether Cohesity met its burden of showing that Seidl's breach of contract and breach of the implied covenant causes of action arose from Cohesity's letter and lawsuit.

Seidl argues on appeal that his causes of action did not arise from Cohesity's letter or lawsuit but from Cohesity's "wrongful position" that Seidl's shares had not vested, it had a right to repurchase the alleged unvested shares, and it was entitled to $405,268.82 from Seidl. However, Seidl's cross-complaint identified no conduct taken by Cohesity to manifest this "wrongful position" other than its letter and subsequent lawsuit.

Breach constitutes a necessary element of Seidl's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Breach of the implied covenant similarly requires a breach. (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.)

The only acts by Cohesity that Seidl alleged breached the contract or the implied covenant of good faith and fair dealing were the sending of Cohesity's letter and the filing of the lawsuit. He did not allege that Cohesity did anything prior to or after its letter and lawsuit that constituted a breach of contract or a breach of the implied covenant. Therefore, the causes of action arose from Cohesity's letter and lawsuit. As the petitioning activity itself was the wrong complained of, Cohesity has met its burden

9

under the first step of the anti-SLAPP analysis. (See *Laker*, *supra*, 32 Cal.App.5th at p. 763.)

Seidl's reliance on *Gotterba v. Travolta* (2014) 228 Cal.App.4th 35 is misplaced. In *Gotterba*, the plaintiff's cause of action sought declaratory relief to resolve an underlying dispute about a contract, not damages caused by a prelitigation demand letter. (*Id.* at pp. 38–39.) The prelitigation demand letters in *Gotterba* were merely evidence of the existence of a dispute. (*Id.* at p. 42.) Here, in contrast, Cohesity did not move to strike Seidl's declaratory relief cause of action but only his breach of contract and breach of the implied covenant causes of action, both of which required proof of a breach and were based on Cohesity's letter and lawsuit.

We conclude that Cohesity met its first prong burden and established that Seidl's breach of contract and breach of the implied covenant of good faith and fair dealing causes of action arise from protected activity. The burden, therefore, shifts to Seidl to demonstrate these causes of action have at least minimal merit.

C. *Second Prong: Did Seidl Establish Minimal Merit?*

Cohesity asserts that Seidl's breach of contract and breach of the implied covenant causes of action lack even minimal merit. Cohesity maintains that Seidl cannot support the factual basis for these causes of action with admissible evidence because the litigation privilege bars admission of evidence of Cohesity's letter and lawsuit. Seidl claims that the litigation privilege does not apply because the application of that privilege to contract actions is limited to cases where the privilege's underlying purposes will be served by its application, and those purposes will not be served by its application here.

Under the second step of the anti-SLAPP analysis, "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a

10

'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature . . . 'the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

The litigation privilege "will apply to contract claims only if the agreement does not 'clearly prohibit' the challenged conduct, and if applying the privilege furthers the policies underlying the privilege." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 787.) The policies underlying the litigation privilege are " ' "to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions," ' " and to " 'promote[] effective judicial proceedings by encouraging " 'open channels of communication and the presentation of evidence' " without the external threat of liability [citation], and "by encouraging attorneys to zealously protect their clients' interests." ' " (*Id.* at p. 788.)

In *Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267, the court applied the litigation privilege in a contract action where the agreement did "not clearly prohibit the conduct that plaintiff challenges" (*id.* at p. 276) and application of the privilege would further the privilege's underlying purposes. (*Id.* at p. 277.) Similarly, in *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, the court found that the litigation privilege applied to a breach of contract cause of action because application "of the privilege furthers the policy of allowing access to the courts without fear of harassing derivative actions." (*Id.* at p. 1498.)

11

Seidl does not deny that the litigation privilege may apply to prelitigation communications (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 889; *Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 334) or that it may apply to a lawsuit. He claims only that the underlying purposes of the litigation privilege do not support its application here because this case does not involve "a significant public concern" and it would "frustrate the purpose of the parties' bargained for exchange."

We disagree. Application of the litigation privilege here would serve the purposes of the privilege. It would free litigants, like Cohesity, from the fear that their prelitigation communications and subsequent legal actions would subject them to harassment by derivative actions. And it would promote effective judicial proceedings by encouraging open communication between litigants without subjecting them to liability for their mere participation in a legal dispute. Consequently, we decide the litigation privilege applies. Since the application of the privilege means that Seidl's causes of action cannot succeed due to the lack of admissible evidence,[4] the trial court should have granted Cohesity's section 425.16 motion and stricken these two causes of action.

## III. DISPOSITION

The trial court's order denying Cohesity's section 425.16 motion is reversed. On remand, the court is directed to enter a new order granting Cohesity's section 425.16 motion and to award Cohesity its attorney fees and costs. (§ 425.16, subd. (c)(1).) Cohesity shall recover its appellate costs. (Cal. Rules of Court, rule 8.278(a)(1).)

---

[4] In light of this conclusion, we need not reach Cohesity's alternative assertion that Seidl's causes of action lack minimal merit because he could not prove the required element of damages.

_____

Danner, Acting P.J.



WE CONCUR:




_____

Lie, J.




_____

Wilson, J.




**H048981**
*Seidl v. Cohesity, Inc.*